**Reversed and Remanded and Memorandum Opinion filed May 9, 2013.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-12-00284-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**STEPHANIE SANDERS, Appellee**

**On Appeal from County Court at Law No. 1**
**Fort Bend County, Texas**
**Trial Court Cause No. 11-CCR-157732**

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals an order granting a motion for new trial filed by appellee Stephanie Sanders. The State contends that the trial court abused its discretion by granting a new trial (1) "on a motion that did not show that Appellee's trial was seriously flawed;" and (2) "based on his thoughts, personal feelings, or emotions about the case." We reverse and remand.

## Background

Appellee was charged by information with class A misdemeanor theft of property, namely an Apple iPad, valued at $500 or more but less than $1,500.[1] Following a jury trial on January 31, 2012 and February 1, 2012, the jury found appellee guilty of the charged offense. The trial court sentenced appellee on February 9, 2012 to 365 days confinement probated for 14 months and a $200 fine.

Appellee filed a motion for new trial on March 5, 2012. In its entirety, the motion states as follows:

> STEPHANIE SANDERS, Defendant in the above cause, moves the Court to set aside the verdict and grant her a new trial, or in the alternative to grant a new trial as to punishment only under Texas Rules of Appellate Procedure 21 herein upon the following grounds:
>
> > 1. In the interest of justice this conviction and sentence should be reviewed and new trial granted by this Honorable Court.
> >
> > 2. The verdict was contrary to the law and justice under TRAP 21.3 (b) and (h).
> >
> > 3. The verdict was not the free, full, and voluntary true verdict of all members under TRAP 21.3 (c), (g) and (h). One of the jurors, Deborah Simpson, was seen in tears and broke down and fled the court room after the verdict was read. That juror was apparently the lone holdout at one point and it is clear from the jury notes and questions sent to the court that her verdict was the product of coercion by the other jurors and not her true and fair opinion.
>
> WHEREFORE, Defendant prays that a new trial be granted as to guilt, or in the alternative, as to punishment alone under TRAP 21.1 (b). The defendant also requests that an evidentiary hearing be heard at which witnesses may be presented and evidence and testimony may be received on the issues raised in this motion.

No hearing was held on appellee's motion, and the trial court granted appellee's

---

[1] *See* Tex. Penal Code Ann. § 31.03(a), (e)(3) (Vernon Supp. 2012).

motion on March 5, 2012. The trial court order states: "ON THIS DAY, the Court having heard the arguments of parties and having reviewed this motion hereby GRANTS the defense motion for new trial and orders the defendant considered for new bond in these proceedings."

The State filed a "motion to set aside an unauthorized order granting defendant's motion for new trial" on March 21, 2012. In its motion, the State argued that (1) appellee's motion was fatally defective because it was not verified and supported by affidavit; (2) a new trial on punishment should not be granted because appellee agreed to punishment and cannot now challenge the agreement; (3) Texas Rule of Evidence 606(b) allows only for juror testimony of coercive outside influence and bars a juror from testifying regarding any coercive influence of any juror upon another juror; (4) if the trial court fails to find appellee's motion "fatally defective or to sustain the State's objection pursuant to Rule 606(b)," the State's attached affidavits from the jury foreperson Barbara Miller and juror Debra Simpson provide evidence that there was no jury coercion during jury deliberations in this case; and (5) lead prosecutor Ali Korfin's affidavit provides that none of the jurors "appeared emotionally upset or in tears" when they left the courtroom after the verdict.

The trial court held a hearing on the State's motion to set aside on March 21, 2012. At the hearing, appellee argued that the trial court need not "reconsider its fair decision on granting the motion" because the trial court "has complete discretion" to grant a motion for new trial. Appellee also argued that the State "overlooks the fact that on one of the grounds that this was based upon was the interest of justice. Interest of justice are [sic] within the sound of discretion of the Trial Court. They are frankly reasons that the Trial Court neither needs to explain on the record nor does the Trial Court need to adopt or make any findings

3

regarding this as the Court of Appeals presumes that the Trial Court made such findings that would be supported by law."

The State responded that appellee's motion was fatally defective because it was not verified or supported by an affidavit. The State pointed out that the trial court's order inaccurately stated that the trial court granted appellee's motion after hearing arguments of the parties because the State was not present, made no arguments, had "no notice that the motion was going to be presented," and had "no chance to respond or object" to the motion. The State also pointed out that the trial court's order did not reflect whether the motion granted a new trial solely on punishment, and that a new trial on punishment would be improper because appellee agreed to the assessed punishment. The State also contended that there is no evidence in this case that would "give any argument to interest of justice," and asked the trial court "for a legal basis through your findings of fact and conclusions of law in order to ascertain the basis for the Motion for New Trial." Lastly, the State noted that the trial court polled the jury after the verdict, and that each juror confirmed that the verdict was "true and accurate."

Appellee agreed with the State that the trial court's order "can be clarified" to reflect that the court did not grant a new trial on punishment only because the punishment "was a product of negotiation." Appellee argued that the court acted within its discretion in granting appellee's motion for new trial and urged the trial court to stand by its decision. The hearing concluded with the following exchange between the State and the trial court:

> THE STATE: Lastly, if this Court decides to keep with its original decision and while ordering a new trial, then the State would ask for Findings of Fact and Conclusions of Law in order to ascertain what the basis was so we can then pursue an appeal.
>
> THE COURT: Okay. And I think I can just cut the chase on that.

4

THE STAE: Okay.

THE COURT: It's in the interest of justice. After hearing this case, it was one that stayed on my mind. I didn't have to think about it too long when the Motion was submitted because I questioned the case at the time of trial; and so, I am going to grant a new trial in the interest of justice and the issue that it's a new trial. It's not punishment. I will — it's the guilt. Okay.

The State filed a timely notice of appeal on March 22, 2012.

## Standard of Review

The granting of a motion for new trial rests within the sound discretion of the trial court. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Moreno v. State*, 297 S.W.3d 512, 520 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "'We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable.'" *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012) (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). We presume the trial court correctly granted a new trial, and the State has the burden to establish the contrary. *Moreno*, 297 S.W.3d at 520. We will uphold the trial court's judgment if any appropriate ground exists to support it. *Id*.

## Analysis

Relying on *State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007), the State argues that the trial court abused its discretion by granting appellee's motion for new trial because (1) appellee "failed to show any serious flaw in her trial that adversely affected her substantial rights to a fair trial;" and (2) "[t]he trial court's statement, 'I questioned the case at the time of trial; and so, I am going to grant a

new trial in the interest of justice," expresses an invalid reason to grant a new trial.

We begin our analysis by addressing whether the trial court abused its discretion by granting appellee a new trial in the interest of justice as it stated at the March 21, 2011 hearing.

## I.    Motion for New Trial in the Interest of Justice

Texas courts consistently have held that a trial court has authority to grant a new trial "in the interest of justice" and that the trial court's decision to grant or deny a defendant's motion for new trial is reviewed only for an abuse of discretion. *See Herndon*, 215 S.W.3d at 906. But that discretion is not unbounded; "justice" means in accordance with the law. *See id*. at 907. A trial court does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. *Id*. It cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because it personally believes that the defendant is innocent or "received a raw deal." *Id*. On the other hand, a trial court is not limited to the mandatory new trial grounds listed in Rule 21.3 because that list is illustrative, not exclusive, and a trial court may grant a motion for new trial on other legal grounds as well. *See id*.

As a general rule, a trial court does not abuse its discretion in granting a motion for new trial in the interest of justice if the defendant (1) articulated a valid legal claim in his motion, (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim, and (3) showed prejudice to his substantial rights under the rules of appellate procedure. *Id*. at 909; *Moreno*, 297 S.W.3d at 522; *see* Tex. R. App. P. 44.2. The defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial. *Herndon*, 215 S.W.3d at 909. But a trial court does not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his

6

substantial rights to a fair trial. *Id.*

Appellee's first ground in the motion for new trial states: "In the interest of justice this conviction and sentence should be reviewed and new trial granted by this Honorable Court." The State argues on appeal that appellee's first ground is merely a conclusory statement "unsupported by specific facts or legal argument" that does not "identify any serious flaw in the trial or in what way those flaws, if any, adversely affected Appellee's substantial rights to a fair trial." The State also argues that the trial court's statement that it questioned the case at the time of trial constitutes a legally invalid reason to grant a new trial in the interest of justice.

Appellee responds that the trial court acted within its discretion by granting her motion for new trial because she met the three prongs set out in *Herndon*. She argues that her request for a new trial "premised 'in the interest of justice'" provides a valid legal claim. She argues that her "interest of justice" ground is based on insufficiency of the evidence to support the verdict and improper remarks the State made during its opening statement. According to appellee, "if there is error on the record of the trial, such as an improper remark by the prosecutor or insufficiency of evidence, the grounds 'in the interest of justice" are sufficient to point to such an error without greater specificity or evidence required because the trial judge is aware of the foregoing proceedings to the extent that he could identify error without having to produce evidence." Appellee further claims she showed that her substantial rights were affected because insufficient evidence to support a conviction "would have an impact of constitutional magnitude" and "improper argument by the State during opening statement could have been so burdensome to the defense that it caused this type of harm."

Appellee claims that the trial court's statement that it questioned the case at the time of trial meant that it questioned the trial "because [it] felt evidence was

insufficient to support the verdict or there were so many flaws in the record that affected Appellee's substantive rights." According to appellee, the "case was replete with issues the trial judge could have seen as causing a problem with sufficiency of the evidence." In particular, appellee contends the "trial judge could have easily found that the officer was not credible and that there was not sufficient evidence to convict Appellee for theft."

We address whether the trial court abused its discretion by granting appellee a new trial in the interest of justice in light of appellee's acknowledgement that her request for a new trial "in the interest of justice" rests upon an assertion that (1) the evidence is insufficient; and (2) the State made improper remarks during opening statement.

When deciding a motion for new trial challenging the legal sufficiency of the evidence, the trial court applies the appellate legal sufficiency standard of review. *Moreno*, 297 S.W.3d at 520 (citing *State v. Provost*, 205 S.W.3d 561, 567 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Thus, the trial court, viewing the evidence in the light most favorable to the verdict, must determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* When reviewing the evidence, the trial court may not sit as the thirteenth juror and may not substitute its beliefs for those of the jury. *Id.* If the evidence meets this standard, the trial court has abused its discretion in granting the motion for new trial. *Id.*

As applicable in this case, a person commits theft if he unlawfully appropriates property, namely an iPad valued at $500 or more but less than $1,500, with the intent to deprive the owner of property. *See* Tex. Penal Code Ann. § 31.03(a), (e)(3) (Vernon Supp. 2012).

At the guilt-innocence phase of trial, complainant testified that she went to

8

the National Tire and Battery ("NTB") store in Stafford, Fort Bend County on August 8, 2011 to take care of a car tire problem. While complainant was waiting by a display of boxes located in front of the service desk of the general sales area to speak to the store manager, Sal Nunez, she put her iPad[2] on the display and read a newspaper. When Nunez called complainant, she walked a few steps to the service desk to talk to him. Complainant did not realize at the time that she had left her iPad on the display. Complainant testified that a woman walked up behind her and was "rather aggressive about needing to check out and needing to be taken care of right at the moment, but the store manager very kindly said that he . . . would get with her as soon as possible." Complainant later realized that her iPad was missing, and informed Nunez. Although complainant remembered bringing her iPad with her, she checked her car to make sure it was not there. Complainant and Nunez watched the store's surveillance video, which showed appellee taking the iPad from the display. Nunez found the contact information of the person they saw take the iPad. Complainant identified appellee in the courtroom as the person she saw taking her iPad on the video.

Nunez testified that he was talking to complainant at the service desk when appellee approached the service desk and asked for "someone to please hurry up and get her rung out." Nunez testified that he looked up at appellee and he and another employee told appellee that they would take care of her shortly. When Nunez finished writing complainant's work order, she informed him that someone had stolen her iPad and that she was sure she had left it on the display. Complainant also looked in her car but could not find the iPad. Nunez and complainant then watched the store's surveillance video. Nunez testified that the video shows: (1) complainant placing her iPad on the display and reading a

---

[2] Complainant testified that she purchased the iPad; a receipt introduced into evidence showed the iPad and case cost $723.11.

newspaper; (2) complainant talking to Nunez; (3) appellee attempting to conceal complainant's iPad by placing something that looked like a magazine over the iPad, looking around, and then putting the iPad in appellee's purse; (4) appellee interrupting Nunez's conversation with complainant and asking for her keys; and (5) Nunez looking up and letting appellee "know we will be right with her."

Nunez testified that after he and complainant reviewed the video, he recognized appellee and found her information. He called appellee to give her an opportunity to return the iPad and asked her if "she had possibly accidentally picked up an iPad." Appellee replied that she did not have the iPad. Nunez testified that appellee did not tell him during their telephone conversation that she also owned an iPad. Nunez ended the conversation by informing appellee that "the video did indicate that she might have picked it up and that if it wasn't returned, we would have to call Stafford P.D." Nunez testified that appellee called the store 10 or 15 minutes later and told another store employee that she had picked up the iPad; she had an iPad with the same case; and she would bring the iPad to the store. Nunez had called the police in the meantime. Police Officer Flagg arrived about 20 to 30 minutes later, reviewed the video, and contacted appellee. Appellee later arrived at the store with two iPads; Nunez could not tell a difference between the two iPads.

Officer Flagg testified that when he arrived at the store after receiving a call concerning a theft, he met with complainant who told him that her iPad had been stolen and that Nunez could provide "video footage of the theft." Nunez then showed Flagg the video and told Flagg that he had contacted appellee. Flagg contacted appellee to inquire if she intended to come to the store, and appellee arrived about 10 to 15 minutes later. Flagg testified that appellee gave him two iPads that appeared to be identical; appellee told him that "she had mistakenly

10

taken one [iPad] from inside the lobby." Flagg offered to show appellee the video but she said "she did not need to" watch it. Flagg testified that he then arrested her for theft based on the video showing that appellee "approach[ed] the iPad. She looked in all directions and then she placed a magazine over the iPad, concealing the item and she put both items in her purse and went to the front counter . . . trying to get someone's attention to get the keys."

The video played at trial showed the following sequence of events. Complainant walked from the display to the service desk to talk to Nunez and left her iPad on the display. Shortly thereafter, appellee walked into the sales area while talking on her cell phone and carrying a large purse and something that looked like a magazine or book[3] tucked under her arm. She walked around the display and stopped at the left side of the display, almost passing the iPad on the display. Appellee looked to the front in the direction of the store employees at the service desks. She took the book from under her arm and tucked her cell phone between her ear and shoulder. She then took a step back; turned toward the iPad; was about to place the book on top of the iPad but picked the book back up; looked to the side and the back of the store; put the book on top of the iPad; and picked the book up together with the iPad and placed both items together in her large purse. Appellee then took a few steps past the display toward the front desk and stood behind complainant, who was still at the front desk talking to Nunez. Appellee, who still was holding her cell phone, turned around and looked to the side and back of the store. She then turned back toward the front desk, raised her left hand while holding her cell phone with her right hand and seemingly addressed Nunez and another employee at the front desk. Appellee continued walking back and forth

_____

[3] Based on the video, the item appellee had tucked under her arm looked like a magazine or a book. We will refer to the item as being a book because it is irrelevant to the disposition of this case whether the item was indeed a book or a magazine.

11

behind complainant.

Appellee also testified at trial. She stated she had a full agenda the day she came to the NTB store. Besides getting her truck serviced, she had to change rooms at the school she worked and had to get a power of attorney that day. She testified that she left the house with her purse, in which she had her cell phone, book, and iPad. At the NTB store, the employee could not find appellee's information, so she went to her truck to look for paperwork. Appellee returned to the waiting room, read her book, and talked to her son on the cell phone regarding a power of attorney. When she could not find her iPad in her purse, she assumed it was in her truck because she remembered having it in the morning. Appellee testified that she left the waiting area and went into the sales area after an employee tapped on the window and held her keys up. She testified that she noticed an iPad as she walked into the sales area, assumed it was her iPad because it looked just like hers, and put the iPad in her purse. Appellee stated that she thereafter waited in line for an employee to print her "receipt, signed it, and left."

Appellee denied noticing complainant standing in front of her at the service desk; she also denied trying to get Nunez's attention or telling someone that she was in a hurry or "ready to go." Appellee stated that she did not immediately look for her iPad when she arrived home but went to her "laptop to pull up the power of attorney." About ten minutes after she came home, she received a call from an NTB employee who "made a reference to something being taken." Appellee testified that she told the employee she "didn't take anything." Appellee stated that near the end of the telephone conversation the employee "mentioned an iPad" and that she told the employee that she had her iPad.

After she hung up, she pulled out the iPad from her purse, turned it on, and noticed that the iPad had a different screensaver. She went to her truck and found

her iPad under the passenger seat. According to appellee, she realized "at that point" she had taken somebody else's iPad. She called the store and told an employee that she had two iPads and that she would return one. She acknowledged she did not immediately drive to the store but waited for a power of attorney so she could get it notarized and the iPad returned "in one trip." When she arrived at the store, she showed Flagg two iPads and told him that she had made a mistake. According to appellee, Flagg mentioned the surveillance video and told her she "needed to look at the video." She responded that she did not need to look at the video because she "didn't feel [she] did anything wrong."

Appellee testified she did not realize she was accused of stealing until Flagg arrested her. Appellee stated that she did not think she concealed the iPad. She also stated that she did not look around but "looked at [her] truck that was immediately out the front door." Appellee denied interrupting Nunez's conversation with complainant; she stated she "kind of motioned for [her] keys. That was basically it." She acknowledged that Nunez told her someone will assist her shortly.

Applying the appropriate standards of review, we conclude that when the evidence is viewed in the light most favorable to the verdict, there is legally sufficient evidence from which a rational jury could have found the essential elements of the offense beyond a reasonable doubt. The jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In reviewing appellee's motion, the trial court had to presume that the jury resolved any conflicts in the evidence in favor of the verdict. *See Moreno*, 297 S.W.3d at 522 (citing *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993)). Therefore, the trial court abused its discretion to the extent it granted appellee's motion for new trial in the interest of

13

justice based on legally insufficient evidence.

We next consider whether the trial court acted within its discretion by granting appellee's motion in the interest of justice because "the State improperly anticipated a defense."

Appellee argues that the State anticipated a defense and that this was "an example of prosecutorial misconduct as it is contrary to the presumption of innocence and unfairly shifts the burden of proof from the State to the defendant" in violation of article 38.03 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2012). According to appellee, "improper argument by the State during opening statement could have been so burdensome to the defense that it caused" harm.

Article 38.03 provides: "All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial."

Contrary to appellee's assertion, nothing in the State's opening statement establishes improper argument or prosecutorial misconduct. At some point during its opening statement, the State remarked: "I anticipate that the Defense is going to tell you that there was a mistake, and that I want you to remember that actions speak louder than words." Nothing in this statement or any other statement made by the State during trial purports to shift the burden of proof in violation of article 38.03 or otherwise. Further, appellee did not object to the State's statement; instead, appellee herself argued several times in her opening statement that taking the iPad was "a mistake."

14

Therefore, we conclude that the trial court abused its discretion to the extent it granted appellee's motion for new trial in the interest of justice because "the State improperly anticipated a defense" during its opening statement.

Although the trial court specifically stated that it granted appellee's motion for new trial in the interest of justice and not on any other grounds listed in her motion, we will nevertheless uphold the trial court's judgment if any appropriate ground exists to support it. *See Provost v. State*, 205 S.W.3d 561, 566 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, we also must address the grounds raised in appellee's motion for new trial even though it is apparent the trial court did not grant a new trial on those grounds.

## II.    Motion for New Trial based on Rule 21.3(b) and (h)

The second ground in appellee's motion for new trial states that the trial court should grant a motion for new trial because the "verdict was contrary to the law and justice under TRAP 21.3 (b) and (h)." The State argues that the second ground in appellee's motion for new trial is a conclusory statement "unsupported by specific facts or legal argument" and does not identify any serious flaw in the trial. Appellee responds that the claim that the 'verdict was contrary to the law and justice' should be construed to be a challenge to the sufficiency of evidence."

An argument under Rule 21.3(h) is essentially one of sufficiency; we already have concluded that the evidence in this case was legally sufficient to support the jury's verdict, and that the trial court abused its discretion to the extent it granted appellee's motion for new trial on the basis that the evidence was insufficient to support the verdict of the jury.

Rule 21.3(b) provides that a defendant must be granted a new trial "when the court has misdirected the jury about the law or has committed some other material

15

error likely to injure the defendant's rights." Appellee does no more than reference Rule 21.3(b) in her motion for new trial. There is nothing in appellee's motion or in the record in general to support granting a new trial on the basis that the trial court "misdirected the jury about the law or has committed some other material error."

Accordingly, we conclude that it would have been an abuse of discretion for the trial court to grant appellee a new trial on the second ground stated in appellee's motion.

## III. Motion for New Trial based on Rule 21.3(c), (g), and (h)

The third ground in appellee's motion states: "The verdict was not the free, full, and voluntary true verdict of all members under TRAP 21.3 (c), (g) and (h).[4] One of the jurors, Deborah Simpson, was seen in tears and broke down and fled the court room after the verdict was read. That juror was apparently the lone holdout at one point and it is clear from the jury notes and questions sent to the court that her verdict was the product of coercion by the other jurors and not her true and fair opinion."

The State argues that "[a]ppellee's third reason for granting a new trial was not verified and was presented without affidavit in support of the factual assertions therein," and thus "the trial court had no discretion to grant Appellee's motion on her third allegation." Appellee does not respond or otherwise mention this third ground in her appellate brief.

Rule 21.3(c) requires a trial court to grant a motion for new trial "when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion." Rule 21.3(g) requires a trial court to grant a motion for new trial

---

[4] We already have addressed arguments relating to Rule 21.3(h) in section II of the opinion.

16

"when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." To demonstrate jury misconduct, the defendant must show that (1) the misconduct occurred and (2) the misconduct resulted in harm to the movant. *Thomas v. State*, 352 S.W.3d 95, 102 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Gomez v. State*, 991 S.W.2d 870, 871 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

When the grounds for new trial are outside of the record, the motion for new trial must be supported by defendant's affidavit or by the affidavit of someone else specifically showing the truth of the grounds of attack. *Bearden v. State*, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983). "Certainly if the motion for new trial alleging jury misconduct is not verified *and* no affidavits are filed to support it, the trial court is justified in overruling the motion." *Id.* at 691. "A motion for new trial which alleges, *inter alia*, jury misconduct 'must be supported by the affidavit of a juror or some other person who was in a position to know the facts, or must state some reason or excuse for failing to produce the affidavits.'" *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (quoting *Dugard v. State*, 688 S.W.2d 524, 528 (Tex. Crim. App. 1985), *overruled on other grounds by Williams v. State*, 780 S.W.2d 802 (Tex. Crim. App. 1989)).

Appellee provided no evidence to support the allegations in her motion that juror Deborah Simpson (1) was seen in tears, broke down, and fleeing the court room after the verdict was read; and (2) was "the lone holdout at one point" and that "her verdict was the product of coercion by the other jurors and not her true and fair opinion." Further, the record before us does not support appellee's allegations.

The record establishes that, after the jury started deliberating, it asked to have certain testimony read back indicating there is a disagreement regarding the

17

testimony. The jury then stated that "[t]hey got a hung jury," and the trial court gave an *Allen*[5] charge to which Appellee and the State agreed. Later, the jury returned a unanimous "guilty" verdict. Appellee's attorney asked to have the jury polled, and each juror affirmed a verdict of "guilty" on the record. The trial court released the jurors, advising them that they could choose to speak to the attorneys involved in the case or could chose to leave without speaking to the attorneys.

Additionally, the State attached the trial prosecutor's affidavit to its motion to set aside the order granting appellee's motion for new trial; appellee did not object to the affidavit at the hearing on the motion to set aside or otherwise. The trial prosecutor's affidavit stated as follows:

> Defendant, Stephanie Sanders, was convicted by a jury on February 1, 2012. The verdict was returned late in the evening at about 8:00 p.m. The jury was polled and each juror stated that the verdict of guilty was his or her verdict.
>
> After the verdict was rendered, the jurors were released by Judge Childers and told that the attorneys may want to speak to them, but that they (jurors) did not have any obligation to speak with the attorneys. The jurors then left the jury box, exited through the back of the courtroom and were told to wait in the deliberation room to be release[d] by the Judge. I did not witness any juror flee the courtroom after the verdict was read. Defendant's trial attorney, Juanita Barner decided to go out to the main hallway to try and speak with the jurors about the case once they were released. I accompanied her. The defendant, Stephanie Sanders, and my co-counsel, Andrew Herreth, stayed in the courtroom. Four of the jurors remained to speak with us outside in the hallway. Two of the jurors indicated they wanted to go home (presumably due to the late hour) and left. None of the jurors appeared emotionally upset or in tears.

After reviewing the record under the applicable standard of review, we conclude that it would have been an abuse of discretion for the trial court to grant appellee a

---

[5] *Allen v. United States*, 164 U.S. 492, 501 (1896).

new trial on the third ground stated in appellee's motion.[6]

## Conclusion

Having concluded that the trial court abused its discretion by granting appellee's motion for new trial, we reverse the trial court's order granting a new trial, and we remand this cause with instructions to reinstate the judgment of conviction and the sentence for appellee.


/s/    William J. Boyce
       Justice


Panel consists of Justices Boyce, McCally and Mirabal.[7]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[6] In light of appellee's request to read her motion for new trial as challenging the sufficiency of the evidence and the propriety of the State's opening argument, her contention that the State failed to "sufficiently develop the record to show abuse of discretion" by not asking for "more specific findings of fact and conclusions of law at the time the judge issued them" is without merit. Sufficiency of the evidence and improper argument challenges are determinable from the trial court record. *Cf. Mizell v. State*, 70 S.W.3d 156, 162, *aff'd*, 119 S.W.3d 804 (Tex. Crim. App. 2003). Therefore, more specific findings and conclusions were not necessary in order to determine whether the trial court abused its discretion by granting her motion.

[7] Senior Justice Margaret Garner Mirabal sitting by assignment.

19