

## NUMBER 13-15-00554-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

JAVIER BONIFACIO BARRERA ALANIZ,                                   Appellee.

## On appeal from the County Court at Law No. 8
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellee Javier Bonifacio Barrera Alaniz was charged by information with the

offense of driving while intoxicated.   A jury found Alaniz guilty, and Alaniz filed a "Motion

for Mistrial, or in the Alternative, Motion for New Trial."[1]   The following day, the trial court

---

[1] Alaniz's initial filing was actually captioned "Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial."   However, at the hearing, the trial court granted an oral modification, so that the

granted a mistrial on the basis that the evidence was insufficient to sustain the jury's finding of guilt. The State appeals the trial court's order, contending that the trial court abused its discretion in granting Alaniz's motion. We reverse and remand.

## I. BACKGROUND

At trial, the State's sole witness was Officer Crystal Gandaria of the McAllen Police Department, who testified as follows. At approximately 1:17 A.M. on February 28, 2013, she observed a Pontiac Grand Am turn onto a one-way street, driving in the wrong direction. Gandaria executed a traffic stop. When Gandaria approached the driver's door, she observed Alaniz, who appeared to be dazed and did not respond to her first request for his driver's license and insurance. Upon a second request, Alaniz provided his driver's license, but said he would have to look for his insurance. It was at this point that Gandaria detected a "strong odor" of alcohol beverage on Alaniz's breath, slurred speech, and bloodshot eyes. She asked Alaniz to step out of the car and began standardized field sobriety tests.

Gandaria testified that she witnessed six signs of intoxication on Alaniz's "horizontal gaze nystagmus test." Gandaria next administered the "walk-and-turn test." According to Gandaria, Alaniz failed to touch heel-to-toe at all times, used his arms to balance, stopped while walking, failed to maintain balance during instruction, and stepped off of the line—each a "clue" suggesting that Alaniz was intoxicated. Finally, during the "one-leg stand test," Alaniz exhibited poor balance, including swaying, hopping, and putting his foot on the ground in an effort to maintain his steadiness. Gandaria testified

order was captioned "Motion for Mistrial, or in the Alternative, Motion for New Trial." The State does not protest the oral amendment or any issue related to it.

2

that according to standardized rubric for these tests, Alaniz had failed each one. Gandaria then asked Alaniz to provide a specimen of his breath in order to test his blood alcohol concentration (BAC). Alaniz refused. Gandaria placed Alaniz under arrest for suspicion of driving while intoxicated.

Alaniz was transported to the police station, where Gandaria took a video recording of a custodial interview with Alaniz. During the interview, Gandaria again requested a breath specimen, which Alaniz refused, stating that he believed the fact that he was chewing gum earlier in the evening could influence the tests. Gandaria also recorded a second set of field sobriety tests. The recording of this interview was played at trial. Gandaria testified that while Alaniz had performed better on the second set of recorded tests, she still believed he had failed the second set of tests.

Alaniz cross-examined Gandaria on potential shortcomings in field sobriety tests, breath tests, and other matters. As a part of this cross-examination, he elicited the following testimony:

Q. Okay. With respect to the—after you performed these tests, if he had blown, hypothetically, a .04, would you have let him go?

A. Yes.

Q. You would have released him?

A. That's our—that's our procedure at the McAllen Police Department. They blow under the legal limit, they are released.

Q. So if Javier had blown a .05 or .06, you would have let him go that night?

A. We would have called a sober adult for him, to pick him up—

Q. Okay.

3

A.     —but yes.

Q.     But he would not have been prosecuted?

A.     He wouldn't have been—he wouldn't have been prosecuted for the DWI.

Alaniz also cross-examined Gandaria as to the absence of any video to corroborate her testimony regarding her initial encounter with Alaniz, as well as the fact that Alaniz had performed better during the later, video-taped series of sobriety tests.

Alaniz's then-fiancée and current wife testified as a defense witness.   She testified that Alaniz was not intoxicated, but was sleep deprived, having worked 100 hours in the previous week at a location four hours from the couple's home, and that Alaniz had worked a lengthy night shift on the previous evening.   At the close of the evidence, the jury returned a verdict of guilty.

Prior to sentencing, Alaniz argued a "Motion for Mistrial, or in the Alternative, Motion for New Trial."   Alaniz contended that the evidence was legally insufficient to support the jury's verdict.   In particular, he pointed to Gandaria's testimony that Alaniz would have been released and not charged if he had, hypothetically, given a breath specimen and that specimen had returned a BAC of less than 0.08.   Alaniz relied on the statute, which defines "intoxication" as either (A) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substances into the body" or (B) "having an alcohol concentration of 0.08 or more."   *See* TEX. PENAL CODE. ANN. § 49.01(2)(A)–(B) (West, Westlaw through 2015 R.S.).

4

According to Alaniz, Gandaria was admitting that without a positive test showing "alcohol concentration of 0.08 or more" under subsection B, there was not sufficient evidence to show that Alaniz's "mental or physical faculties" were impaired by intoxicants under subsection A. *See id.* Since there was no breath test, Alaniz reasoned that the evidence was insufficient to support a judgment of conviction beyond a reasonable doubt. The trial court agreed with Alaniz and granted a mistrial. The State filed this interlocutory appeal of the trial court's order.

## II. JURISDICTION ON APPEAL AND INVITED ERROR

As an initial matter, we address our jurisdiction to hear this appeal. Alaniz styled his filing "Motion for Mistrial, or in the Alternative, Motion for New Trial." At the hearing the following day, the trial court granted a mistrial. On appeal, the State acknowledges that the Texas Code of Criminal Procedure provides no authority for the State to appeal an order granting a mistrial. *State v. Boyd*, 202 S.W.3d 393, 400 (Tex. App.—Dallas 2006, pet. ref'd); *see State v. Garza*, 774 S.W.2d 724, 726 (Tex. App.—Corpus Christi 1989, pet. ref'd). However, according to the State, this order is the functional equivalent of an order granting a new trial, and we should therefore treat the order as one granting a new trial. The State contends that because an order granting a new trial is subject to interlocutory appeal, we nonetheless have jurisdiction to consider this appeal.

Alaniz responds that, whatever the functional equivalence of the motion, the State may not challenge this issue on appeal because the State invited the trial court to grant a mistrial rather than a new trial. Alaniz points out that at the hearing, the State repeatedly asserted that Alaniz's motion should be considered a motion for mistrial and

5

that any resulting relief should be in the form of a mistrial.  Alaniz directs our attention to the following statements by the State during the hearing:

> THE STATE:  That's correct.  Under Article 44.01 of the Texas Code of Criminal Procedure, defense counsel's motion for new trial is actually a motion for a mistrial because the sentencing has not been had—it has not taken place. And, of course, the State is going to oppose that, and is asking the Court to respect the jury's finding of guilt.

Later, the State argued against Alaniz's motion, noting that the trial court had previously taken up the same issues when considering Alaniz's motion for directed verdict:

> THE STATE:  Your Honor, this matter was already taken up before this Honorable Court.  This Honorable Court already made a ruling with regards to the motion for mistrial that defense counsel is making, with regards to the exact, same issues.

Finally, at the conclusion of the hearing, the following exchange took place:

> THE COURT:  Motion for new trial is granted.  We'll retry the case.  [The State will] appeal, and we'll go forward.  Let's set up a status case.
>
> THE STATE:  I believe it's a mistrial that's granted, not a motion for new trial, under Article 44.01.
>
> THE COURT:  Do you want it to be a mistrial?
>
> ALANIZ:  What did you grant?
>
> THE COURT:  Well, I thought we had already clarified the issue and allowed you to do the oral amendment, and, therefore, I was granting a new trial.  But, do you want a mistrial?
>
> ALANIZ:  Well, it's the same result.
>
> THE COURT:  Same result.

6

ALANIZ: I don't know what the difference is, personally.

THE COURT: Well, [State]—off the record.

(Discussion off the record at the bench.)

THE COURT: All right. Motion for mistrial is granted.

Alaniz points out that the trial court granted a mistrial after requesting the State's input as to whether the order should be a mistrial or a new trial. Alaniz argues that because the State declared three times that the order should be a mistrial, the State invited any error and cannot complain on appeal. We consider the arguments of Alaniz and the State in turn.

## A.    Functional Equivalence to New Trial

The State has a right to appeal an order of the court granting a new trial. *State v. Doyle*, 140 S.W.3d 890, 892 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (West, Westlaw through 2015 R.S.)). A new trial is the rehearing of a criminal action after the court has, on the defendant's motion, set aside a verdict of guilt. *Doyle*, 140 S.W.3d at 892 (citing TEX. R. APP. P. 21.1). An order for new trial ordinarily comes only after sentence is imposed in a completed trial. *Ocon v. State*, 284 S.W.3d 880, 883 n.1 (Tex. Crim. App. 2009) (quoting *Rodriguez v. State*, 852 S.W.2d 516, 518 (Tex. Crim. App. 1993) (en banc)). By comparison, an order of mistrial ordinarily occurs before completion of the trial and the rendition of judgment. *Id.* This Court has allowed the State to appeal a post-verdict grant of a mistrial, holding that "a post-verdict mistrial ruling which returns the case to the posture in which it had been in before trial is functionally indistinguishable from an order granting a new trial." *Garza*,

7

774 S.W.2d at 726. When an order is the functional equivalent of an order granting a new trial, the reviewing court may look past the label assigned to the order and treat it as an order granting a new trial. *State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996); *Doyle*, 140 S.W.3d at 892.

Here, as in *Garza*, the trial court granted appellant's oral motion for mistrial after the jury had returned a guilty verdict but before the punishment phase began. *See Garza*, 774 S.W.2d at 725. We conclude that the trial court's order granting a mistrial is functionally indistinguishable from a grant of a new trial. We will "look past the label assigned to the order by the trial court and treat the order as a motion for new trial" and we therefore exercise our jurisdiction to review the State's appeal of that order. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3); *Savage*, 933 S.W.2d at 499; *Doyle*, 140 S.W.3d at 892. Accordingly, we treat the order in question as an order as granting a new trial, for which the State has the right to appeal.

## B.    Invited Error

Alaniz argues that regardless of any functional equivalence, we should not exercise our jurisdiction to consider the State's appeal because the Stated invited the error of which it now complains. During the hearing on Alaniz's motion, the State took the position that the motion and any resulting order should be in the form of a mistrial rather than a new trial. According to Alaniz, the State is therefore estopped from invoking the appellate jurisdiction of an order of new trial.

If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error. *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999)

8

(en banc).  In other words, a party is estopped from seeking appellate relief based on error that it induced or caused.  *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011).  Related civil cases have held that in order for this doctrine to apply, the party who allegedly invited the error must have deliberately and "unequivocally taken a position in the trial court that is clearly adverse to its position on appeal."[2]  *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (orig. proceeding) (quoting *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (per curiam)).

But whatever role the State's position played in shaping the trial court's action, it did not qualify as invited error.  We base our conclusion on three principal reasons.  First, at least to an extent, the State did not "affirmatively seek action by the trial court" so as to truly "invite" error.  *See Prystash*, 3 S.W.3d at 531.  Instead, the State consistently resisted the actions which were proposed by Alaniz—mistrial or new trial—and urged the trial court to uphold the jury's verdict.  The State argued against Alaniz's proposed ground for these actions, insufficient evidence, by observing that the jury had heard extensive testimony from Officer Gandaria and even seen video indicating intoxication. The trial court granted the mistrial despite the State's arguments, not because of them. *See Meza v. State*, 153 S.W.3d 238, 245 (Tex. App.—El Paso 2004, no pet.) (finding

---

[2] In multiple opinions, the Texas Court of Criminal Appeals has looked to civil cases for guidance on the issue of invited error, and we take the same approach here.  *See, e.g.*, *Woodall v. State*, 336 S.W.3d 634, 646 n.15 (Tex. Crim. App. 2011) (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 365 (Tex. 1987); *Wackenhut Corrections Corp. v. de la Rosa*, 305 S.W.3d 594, 624 (Tex. App.—Corpus Christi 2009, no pet.)); *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (en banc) (citing *M., K. & T. Ry. v. Eyer et al.*, 70 S.W. 529, 529–30 (Tex. 1902); *Railroad Co. v. Sein*, 33 S.W. 215, 216 (Tex. 1895)); *see also Ex parte Williams*, 65 S.W.3d 656, 659 (Tex. Crim. App. 2001) (Keller, P.J., concurring) (citing *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000); *Am. Gen. Fire and Cas. Co. v. Vandewater*, 907 S.W.2d 491, 492 (Tex. 1995) (per curiam); *Drake v. Trinity Universal Ins. Co.*, 600 S.W.2d 768, 772 (Tex. 1980)).

Meza did not affirmatively seek action so as to invite error, but had instead passively responded to actions initiated and advanced by the trial court); *see also Neasbitt v. Warren*, 22 S.W.3d 107, 112–13 (Tex. App.—Fort Worth 2000, no pet.) (rejecting claim that invited error barred the defendant from appealing the applicability of a statute, given that plaintiff was the main proponent of its applicability and the trial court had found it applicable mainly at the plaintiff's behest, not the defendant's).

Second, even to the limited extent that the State invited the trial court's ruling, we cannot say the resulting ruling was error, which is often listed as a defining characteristic of invited error. *See*, *e.g.*, *Prystash*, 3 S.W.3d at 531 (holding that invited error "is part of the definition of what can constitute error" for purposes of appellate reversal); *see also Invited Error*, BLACK'S LAW DICTIONARY (10th ed. 2014) (including "erroneous ruling" as a defining characteristic of invited error). Instead, cases dealing with similar orders have not noted any error, but have simply disregarded the label and reviewed the substance of the order—just as we do here. For instance, in *Garza,* this Court reviewed an order of mistrial granted after the jury had returned a verdict of guilt, as we do here. 774 S.W.2d at 726. The *Garza* Court did not declare the label of mistrial to be an error, but simply evaluated the motion for its substance without concern over the order's label. *See id.* The *Garza* court recognized that under the circumstances, the mistrial was "functionally indistinguishable" from an order of new trial. *See id.* Thus, regardless of whether or not the trial court here could grant the mistrial based on the merits, the trial court could certainly label its order a mistrial without committing reversible error; it is simply that because this form of mistrial is so akin to a new trial, the rules make way for

the State's appeal regardless of the label assigned.   *See Savage*, 933 S.W.2d at 499;

*Doyle*, 140 S.W.3d at 892.

Third, the State's position on appeal is not "clearly adverse" to its position in the

trial court.   *See Dep't of Family & Protective Servs.*, 273 S.W.3d at 646.   In the trial court,

the State argued that any order should be in the form of a mistrial.   On appeal, the State

does not reverse course and contend that the trial court erred in labeling its order a

mistrial.   Instead, the State contends that regardless of the label assigned to the order,

this Court should look to the substance of the relief granted and allow this interlocutory

appeal.   *See Savage*, 933 S.W.2d at 499; *Doyle*, 140 S.W.3d at 892.   Thus, we cannot

say that the State's position on appeal is "clearly adverse" to its position in the trial court.

*See Dep't of Family & Protective Servs.*, 273 S.W.3d at 646.

In summary, the State only partly "invited" what cannot truly be called an "error."

*See Prystash*, 3 S.W.3d at 531; *Savage*, 933 S.W.2d at 499.   On appeal, the State

addresses this issue in a fashion that is not "clearly adverse" to its position in the trial

court.   *See Dep't of Family & Protective Servs.*, 273 S.W.3d at 646.   We therefore find

no merit in Alaniz's invited error argument.

### III.   ORDER GRANTING NEW TRIAL

By its sole issue on appeal, the State contends that the trial court reversibly erred

by granting Alaniz's motion.   According to the State, the evidence was sufficient to

support the jury's verdict, and the trial court therefore abused its discretion in granting

relief, which we treat as an order for a new trial for purposes of our review.   The State

contends that the trial court based its decision on a single piece of evidence:   Gandaria's

statement that if Alaniz had submitted a breath specimen which had returned a BAC of less than 0.08, he would have been released without charges. The State asserts that this testimony, by itself, does not render the evidence insufficient. We agree with the State.

## A. Standard of Review and Applicable Law

Texas courts have consistently held that a trial court has authority to grant a new trial "in the interest of justice" and that the trial court's decision to grant or deny a defendant's motion for new trial is reviewed for an abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). But that discretion is not unbounded. *Id.* at 907. A trial court does not have authority to grant a new trial unless the first proceeding was not in accordance with the law. *Id.*

A motion for new trial based on insufficiency of the evidence presents a legal rather than a factual question, and the trial court must apply the same legal test as that employed by the appellate court. *State v. Fuller*, 480 S.W.3d 812, 819 (Tex. App.—Texarkana 2015, pet. ref'd); *State v. Mercier*, 164 S.W.3d 799, 812 (Tex. App.—Corpus Christi 2005, pet. ref'd). "The trial court must decide, after viewing the evidence in the light most favorable to the verdict, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Fuller*, 480 S.W.3d at 819; *Mercier*, 164 S.W.3d at 812. The court reviewing a sufficiency challenge must give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). When the record supports conflicting

12

inferences, we presume that the jury resolved the conflicts in favor of the verdict and therefore defer to that determination. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). If the verdict is supported by sufficient evidence under this standard, it is an abuse of discretion for the trial court to grant the motion for new trial on grounds of insufficient evidence. *Fuller*, 480 S.W.3d at 819; *State v. Sanders*, 440 S.W.3d 94, 101 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). The defendant ordinarily has the burden of proof on a motion for new trial. *Mercier*, 164 S.W.3d at 813 (citing *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (en banc)).

Under a hypothetically correct jury charge, Alaniz was guilty of this offense if he was intoxicated while operating a motor vehicle in a public place. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through 2015 R.S.); *Foley v. State*, 327 S.W.3d 907, 915 (Tex. App.—Corpus Christi 2010, pet. ref'd) (mem. op.). "Intoxication" is defined as (A) "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substances into the body" or (B) "having an alcohol concentration of 0.08 or more." TEX. PENAL CODE ANN. § 49.01(2)(A)–(B); *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012).

## B. Analysis

It is worth recapitulating that portion of Gandaria's testimony which was the basis for Alaniz's insufficient evidence argument. Gandaria first testified that if Alaniz had, hypothetically, submitted a breath specimen which had returned a BAC of less than 0.08, he would have been released without charges. She testified that this was "our procedure

13

at the McAllen Police Department. They blow under the legal limit, they are released." Gandaria further testified that if Alaniz's hypothetical sample had returned a BAC of .05 or .06, law enforcement would have released him and "would have called a sober adult for him, to pick him up . . . ."

The jury could have drawn at least two inferences from this testimony. On one hand, the jury could have taken Gandaria's statements at face value: that even if Alaniz had returned a BAC of less than 0.08, Gandaria would have still considered Alaniz to be not "sober" enough to drive, but that she would not have arrested him or pursued prosecution—as a matter of department policy, rather than actual guilt or innocence. On the other hand, the jury could have at least conceivably taken this testimony as an admission that her encounter with Alaniz did not create sufficient evidence of intoxication to support a conviction, as Alaniz argued and the trial court agreed. To reach this second inference, the jury would have had to give little credence to Gandaria's other testimony: that Alaniz turned the wrong way onto a one-way street in the early morning hours; that he had an odor of alcohol on his breath, a "dazed" expression, red eyes, and slurred speech; that he failed several field sobriety tests and refused to provide a breath specimen; that she considered him to be intoxicated; and that even assuming a breath test result of .06, she would have called a "sober adult" to pick him up, and that her decision to do so would be motivated by department policy, not by any reason related to guilt or innocence. However, the jury did not choose to disbelieve this evidence.

Instead, the jury weighed the evidence and found, beyond a reasonable doubt, that Alaniz was intoxicated while operating a motor vehicle in a public place. *See* TEX.

14

PENAL CODE ANN. § 49.04; *Foley*, 327 S.W.3d at 915. Given that the evidence supported the jury's inference, the trial court was required to defer to the jury's resolution of conflicting testimony and to disregard other possible inferences, just as we are on appeal. *See Temple*, 390 S.W.3d at 360; *Hooper*, 214 S.W.3d at 13; *Fuller*, 480 S.W.3d at 819. This the trial court did not do. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and that the evidence was sufficient to support Alaniz's conviction. *See Fuller*, 480 S.W.3d at 819; *Mercier*, 164 S.W.3d at 812. We therefore conclude that the trial court abused its discretion in ordering a mistrial which was the functional equivalent of a new trial. *See Fuller*, 480 S.W.3d at 819; *Sanders*, 440 S.W.3d at 101.

We sustain the State's sole issue on appeal.

## IV. CONCLUSION

We reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of November, 2016.

15