

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00100-CR

**THE STATE OF TEXAS,**

                                  **Appellant**

 **v.**

**ROLANDO BARRAGAN,**

                                  **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2011-1161-C1

## O P I N I O N

Rolando Barragan was convicted by a jury of two counts of indecency with a child by contact and sentenced to 13 years in prison for each count. TEX. PENAL CODE ANN. § 21.11 (West 2011). The victim was Barragan's son. Barragan filed a motion for new trial which the trial court granted. The State appeals. TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(3) (West 2006). Because the trial court abused its discretion in granting a new trial, the trial court's order granting Barragan's motion for new trial is reversed and

the case remanded to the trial court for sentencing and entry of a judgment in accordance with the jury verdict.

## MOTION FOR NEW TRIAL

The authority which provides many of the grounds for which a trial court must grant a new trial are listed in Rule 21.3 of the Texas Rules of Appellate Procedure. TEX. R. APP. P. 21.3. The rule, however, is not an all-inclusive list. *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007); *State v. Evans*, 843 S.W.2d 576, 578-79 (Tex. Crim. App. 1992). The most commonly cited reason for which a new trial may be granted in a criminal case is "in the interest of justice." *See State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993). And in this proceeding, the trial court stated on the record that he was granting a new trial in the interest of justice. Case law, however, has not been clear in defining what a defendant must, at a minimum, show to properly obtain a new trial in the interest of justice. *See e.g. State v. Thomas*, No. 01-11-00500-CR, 2012 Tex. App. LEXIS 10519 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet. h.). The Court of Criminal Appeals recently made that determination a little more clear. [1]

---

[1] It is interesting to note that as we struggle for the proper test to evaluate the trial court's decision under an abuse of discretion standard in this criminal trial, so also is the Texas Supreme Court struggling with the same issue in civil proceedings when a new trial has been granted. It had long been held that in a civil proceeding, a trial court could grant a new trial for any reason or no reason at all. *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 217 (Tex. 2009) (O'Neill, J., dissenting). The only limitation was the number of new trials that could be granted. TEX. R. CIV. P. 326. All efforts to review the grant of a new trial were rejected until *In re Columbia*. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204 (Tex. 2009). Implementation of having potential review of the granting of a new trial by mandamus has not been free of problems. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685 (Tex. 2012). The issue is again pending before the Texas Supreme Court in *In re Toyota*. *In re Toyota Motor Sales, U.S.A., Inc.*, No. 10-0933 (Tex) (argued on January 8, 2013) (see video archived at http://texassupremecourt.mediasite.com/

*See State v. Zalman*, No. PD-1424-12, 2013 Tex. Crim. App. LEXIS 821 (Tex. Crim. App. June 5, 2013); *State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007).

### TEST FOR ABUSE OF DISCRETION

There is no dispute that the standard of review for the propriety of granting a new trial is whether the trial court abused its discretion. *See State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). We reverse a trial court's judgment only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Id*. n. 4. While we must afford the trial court wide discretion when reviewing motions for new trial, that discretion is not without limits. *See State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007). A judge may grant or deny a motion for new trial "in the interest of justice," but justice means in accordance with the law. *Id*. at 907. A judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because he believes the defendant received a raw deal or is innocent. *Id*.

### *Herndon*

As the Court of Criminal Appeals stated in *Herndon* and reaffirmed in *Zalman*, there is generally no abuse of discretion if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the

---

mediasite/Play/47fbb87984ab45f9abe588dc383876f61d). To some extent it may be important to note that we review this issue in a direct appeal because, unlike the rules of civil procedure, the statute expressly provides that, in criminal cases, the State can appeal the granting of a new trial. TEX. CODE CRIM. PROC. ANN. art 44.01(a)(3) (West 2006).

trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the harmless error standards of the Texas Rules of Appellate Procedure. *Herndon*, 215 S.W.3d at 909, *Zalman*, 2013 Tex. Crim. App. LEXIS 821, *6-7. The defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial, but trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was "seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon*, 215 S.W.3d at 909. While a trial court has wide discretion in ruling on a motion for new trial which sets out a valid legal claim, it should exercise that discretion by balancing a defendant's "interest of justice" claim against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2. *Id*. at 908. Trial courts should not grant a new trial if the defendant's substantial rights were not affected. *Id*.

In applying these principle and concepts, we conclude that, at a minimum, before the trial court can set aside the work of the fact finder, there must have been some specifically articulated activity or irregularity that occurred during trial that was error or would have been error if properly objected to, evidence to substantiate the articulated activity or irregularity, and further, that the activity, whatever it was, adversely affected the substantial rights of the defendant. *See Herndon,* 215 S.W.3d at 909; *Zalman*, 2013 Tex. Crim. App. LEXIS 821, *6-7. To some extent, the trial court must

act like an appellate court and determine if some event caused the requisite level of harm to the defendant. *See Herndon*, 215 S.W.3d at 908 (citing TEX. R. APP. P. 44.2), and at 910.

In this proceeding, the trial court stated on the record why he was granting the motion for new trial as follows:

> Taking into account all the things — all the testimony at the trial and the evidence that was introduced at both phases of the trial and argument of counsel and things I have heard today, I have to agree, and I so find that it's in the best interest of justice that I declare a new trial — that I grant the Motion for New Trial. I've never done that before, but I'm going to do it this time.

With that in mind, we turn to the steps enunciated in *Herndon* and reaffirmed in *Zalman*.

### Valid Legal Claim

To determine whether the trial court abused its discretion in granting a new trial, we must first decide whether Barragan stated a valid legal claim in his motion for new trial. *Zalman*, 2013 Tex. Crim. App. LEXIS 821, *8. One of his claims, and the only one relied upon by the trial court in granting the motion for new trial in the interest of justice, was that the State failed to correct false or misleading testimony. Generally, the due process clause is violated when the State knowingly, and even unknowingly, uses false testimony, or fails to correct false testimony, to obtain a conviction. *See Ex Parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011); *Ex parte Chabot*, 300 S.W.3d 768, 770-771 (Tex. Crim. App. 2009). Thus, Barragan stated a valid legal claim.

*Evidence to Substantiate Claim*

Next, we look to the second *Herndon* step and determine whether Barragan produced or pointed to evidence in the trial record that substantiated his claim. *Zalman*, 2013 Tex. Crim. App. LEXIS 821, *9. This requires a detailed discussion and analysis of the events that occurred at trial and the motion for new trial. At the hearing on the motion for new trial, Barragan expressed that one of his claims in the motion concerned the testimony of the victim, J.B., and introduced into evidence a transcription of a hearing that was held outside the presence of the jury regarding the discovery of a "change" in J.B.'s testimony. Barragan also called J.B. as a witness at the hearing on the motion for new trial. Barragan then argued that, in taking the evidence introduced during the trial and what was heard at the hearing on the motion for new trial, there was a question about whether or not Barragan was guilty at all.

*Discovery of an Additional/Alternate Explanation*

After both sides rested at trial and closed their evidence, the trial court recessed the jury for an extended time, including lunch, while the trial court prepared the charge and planned to attend a lunch meeting. Immediately after the jury was recessed, the trial court allowed the State to reopen its evidence for the purpose of offering an exhibit into evidence that had been discussed but not admitted. An informal charge conference then occurred off the record. After the informal charge conference, the State again was allowed to reopen its evidence so that the trial court could take judicial notice of the

date of the filing of the indictment.  A short discussion on the record regarding the charge and the allotment of time for closing arguments then took place, and the parties and the court took time for their lunch recess.

After the recess but outside the presence of the jury, the trial court stated on the record,

> Shortly after I returned from lunch and prior to the jury coming back after lunch to argue this case, the State and defense approached the Court in chambers and informed the Court of certain issues that the State felt that they needed to come forward with and disclose.  Rather than my trying to summarize that, I think I'll just let the State put on the record what it was that you-all came to me with during the lunch break.

The prosecutor for the State then disclosed on the record that while one prosecutor was presenting the State's rebuttal evidence, another prosecutor asked J.B., out of the presence of the jury, if his father had put medication on J.B as J.B.'s father had testified. J.B. replied that he had.  J.B. was asked if J.B.'s testimony the day before about his father touching him was the same or a different time as when his father put medicine on him; J.B. replied that it was the same time.  J.B. told the prosecutor that his father's application of the medicine made him uncomfortable and that it was different than when his mother applied the medicine.  J.B. said that when his mother applied the medicine, it did not make him uncomfortable.  When asked by the prosecutor if J.B.'s father ever touched him when applying the medicine, J.B. replied, "no."

The prosecutor informed the trial court that she explained to J.B. that he had a little sister and asked J.B. why he thought nothing would happen to her.  J.B. replied to

the prosecutor that his father told him he would not do it again and that it had not happened "since all of this came out." J.B. also told the prosecutor that he did not think it would happen to him because he was bigger and stronger now and would be able to stop his father.

Based on this information, the prosecutor, in accordance with *Brady*, felt she should disclose to the defense that J.B. had "changed his story." *See Brady v. Maryland*, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). She stated on the record that after lunch, the State asked the trial court for a meeting with him and disclosed what the State had learned. She also stated on the record that she told the defense that if they wanted to re-open the evidence and question J.B. regarding the new statements, the State would agree. The prosecutor continued that she warned the defense that should they move to re-open the evidence, additional testimony would come out regarding potential improper influence of J.B., questions would be asked about other statements made by J.B. regarding his sister and why "it" would not happen again, and other areas would be explored that could make Barragan appear more culpable to the jury. This concluded the State's summary on the record of what was brought to the trial court's attention after the trial court's lunch break.

In response to a question by the trial court, the prosecutor stated that J.B. had never mentioned before that his father was applying medicine when he touched J.B.

The trial court then asked Barragan's counsel what Barragan wished to do. The trial court was prepared to re-open and recall J.B. to have the information disclosed. After a discussion with Barragan, his counsel stated that he believed re-opening the evidence would unduly prejudice Barragan. Further, Barragan insisted to his counsel that he did not wish to re-open the case. The trial court confirmed directly with Barragan that Barragan did not wish to re-open.

The jury was then brought into the courtroom for the reading of the charge.

*Testimony at the Motion for New Trial*

At the motion for new trial, J.B. testified that during the trial he was waiting in the District Attorney's office with his mother. At some point, he spoke to one of the prosecutors who asked J.B. questions about some of his father's testimony. J.B. was asked if his father had applied medicine to a rash. J.B. told the prosecutor that the time J.B.'s father applied the medicine was the only time his father touched him "down there."

On cross-examination, J.B. testified that it made him feel bad that his father, Barragan, was in jail. J.B. also acknowledged that Barragan had also put medicine between J.B.'s legs when J.B. was a baby because of a surgical procedure. J.B. could not recall when he had the rash that also required medicine or what caused the rash. J.B. further acknowledged that the prosecutor asked J.B. about whether he was worried about Barragan touching J.B.'s little sister the way he had touched J.B. J.B. had replied

that he was not worried because J.B. was bigger now. J.B. also told the prosecutor he was not worried about himself either because he was bigger.

*Testimony from Trial*

Although he did not specifically ask the trial court to recall J.B.'s and other witnesses' testimony from the trial, based on Barragan's argument at the hearing, the trial court could necessarily recall what J.B. and the other witnesses had previously said.

J.B.'s initial testimony at trial was very vague regarding any sexual contact by Barragan. The most J.B. testified to was that his father touched him once and it made him uncomfortable. He marked on a drawing of a boy the area where he was touched; that being the penis. J.B.'s mother, who Child Protective Services noted was the first person J.B. told about his father's actions and who was initially called by the State as the outcry witness, denied ever being told by J.B. that he was inappropriately touched by his father. J.B.'s mother did testify that she saw J.B. with an erection after he and Barragan had been playing and at another time saw Barragan move his arm away from J.B. under the covers while Barragan and J.B. were in bed.

After J.B.'s mother denied that J.B. told her he was touched inappropriately by Barragan, the State recalled the CPS worker to testify as the outcry witness. She testified that J.B. told her Barragan touched J.B.'s penis on at least 5 different occasions. The touching would be over J.B.'s clothes and Barragan would wiggle J.B.'s penis.

Barragan testified that he had touched J.B.'s penis to put medicine on it for a rash.

*Argument*

Barragan argued to the trial court that because of the evidence heard at trial and at the motion for new trial hearing, there was clearly a question about whether he was guilty of the offense for which he was convicted. He also argued that the jury needed to hear the explanation as well as other testimony the State had and make their decision based on all of the evidence. The State, on the other hand, argued that the additional testimony in no way shows that J.B.'s trial testimony was false. The State further argued that, at best, J.B.'s later story would have been evidence to be used to impeach J.B.'s credibility as to that story.

*Application*

After reviewing the record, we agree with the State that the additional testimony at the motion for new trial hearing did not show J.B.'s trial testimony to be false or even misleading. J.B. testified at trial that Barragan "touched" him once and it made J.B. uncomfortable. At the motion for new trial he testified that the one time Barragan touched him was to apply medicine and that it made J.B. uncomfortable. J.B. also stated that he had worried about Barragan touching J.B.'s little sister the way he had touched J.B., but was not worried anymore because J.B. was bigger now. The most that could be argued is that some of J.B.'s trial testimony may have been vague, inconclusive, or

confusing, which is not necessarily uncommon for testimony from a young victim, and that the additional information may have clarified the prior testimony. There was, however, a substantial question of whether the information learned later would have clarified earlier testimony and whether it was credible. But it is not the type of new or additional information that established the earlier testimony as so clearly false or misleading that it could be said the State had an affirmative duty to move to re-open the evidence to correct or clarify the prior testimony. *See e.g. Duggan v. State*, 778 S.W.2d 465 (Tex. Crim. App. 1989) (duty to correct false or misleading evidence is a constitutional requirement); *but see Johnson v. State*, 810 S.W.2d 785, 786 (Tex. App.—Waco 1991, pet. ref'd) (no duty under Article 2.01 of the Code of Criminal Procedure to offer exculpatory information into evidence); *see also Ex parte Kunkle*, 852 S.W.2d 499, 505-06 (Tex. Crim. App. 1993) (counsel not ineffective for withholding potentially mitigating evidence for strategic reasons) and *McFarland v. State*, 845 S.W.2d 824, 848 (Tex. Crim. App. 1992) (counsel not ineffective when defendant refused to proffer potentially mitigating evidence in order to spare family "public ridicule and humiliation"). Thus, we find that Barragan did not supply or point to evidence that substantiated the legal claim he articulated in his motion for new trial. The second step of *Herndon* was not satisfied, and therefore, the trial court abused its discretion in granting Barragan's motion for new trial in the interest of justice.

*Harmless Error*

Even if the "change" in J.B.'s testimony rendered his trial testimony false or misleading such that the State was required to re-open the testimony, thus satisfying *Herndon*'s second step, Barragan did not show that his substantial rights were affected. Trial courts should not grant a new trial unless a defendant shows prejudice to his substantial rights under the harmless error standards of the Rules of Appellate Procedure. *Zalman*, 2013 Tex. Crim. App. LEXIS 821 at *7; *Herndon*, 215 S.W.3d at 909. Any error, defect, irregularity, or variance that does not affect substantial rights, *i.e.*, it did not seriously affect the verdict or render the trial fundamentally unfair, must be disregarded. TEX. R. APP. P. 44.2(b); *Jacobson v. State*, 398 S.W.3d 195, *26 (Tex. Crim. App. 2013).

It is worth repeating that the State and the trial court were more than willing to allow the evidence to be re-opened to submit J.B.'s additional testimony. But along with that testimony was going to come other testimony potentially damaging to Barragan. Barragan's trial counsel discussed this additional testimony with Barragan after weighing the benefits and detriments and made the decision to not re-open the evidence. In fact, Barragan insisted to his counsel that he did not want to re-open the evidence. If Barragan believed the additional testimony was credible evidence that was the key to clarifying prior testimony about the relevant facts surrounding his contact with J.B., he did not act like it. Re-opening the evidence was the procedure to get this

additional evidence before the jury for its consideration so that the jury could make its decision based on all the evidence if Barragan believed the previous testimony was less than clear and that the this testimony would clarify it.

Further, Barragan did not raise an ineffective assistance of counsel claim in his motion for new trial; thus, he cannot now second-guess trial counsel's decision, after discussion with Barragan, not to re-open the evidence and use it as a means to show Barragan's substantial rights were affected by that decision. *See State v. Thomas*, No. 01-11-00500-CR, 2012 Tex. App. LEXIS 10519, *15-17 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, no pet. h.).

In announcing its decision on the motion for new trial, the trial court commended the State, as do we, for bringing forward at the trial what may be considered potentially exculpatory matters. And, after considering all the evidence adduced at trial, the demeanor of the witnesses, and what was heard at the motion for new trial hearing, the trial court granted Barragan's motion for new trial in the interest of justice. Certainly, we do not fault the trial court for its decision when it was less than clear that *Herndon* articulated the standard and three-part test to be used to determine whether a defendant was entitled to a new trial in the interest of justice and how to apply it. *Herndon*, 215 S.W.3d at 909 ("We need not today set out bright-line rules concerning appellate review of a trial court's discretion in this area…"). The Court of Criminal Appeals' decision in *Zalman* has now made the application of that three-part

test more clear; but the trial court did not have the benefit of the *Zalman* opinion when it made its decision on Barragan's motion for new trial.

**CONCLUSION**

After our review of the evidence and events at trial and at the motion for new trial hearing in light of *Herndon* and *Zalman*, we find that the trial court abused its discretion in determining Barragan produced or pointed to evidence that substantiated his legal claim, or if he did, that his substantial rights to a fair trial were adversely affected. Thus, the trial court erred in granting Barragan's motion for new trial.

The State's sole issue is sustained. The trial court's order granting Barragan's motion for new trial is reversed and the case remanded to the trial court for sentencing and entry of a judgment in accordance with the jury verdict.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Reversed and remanded
Opinion delivered and filed July 25, 2013
Publish
[CR25]