# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00110-CR

### The State of Texas, Appellant

### v.

### Arthur Guilbault, Appellee

### FROM THE COUNTY COURT AT LAW NO. 2 OF COMAL COUNTY
### NO. 2017CR1006, HONORABLE CHARLES A. STEPHENS II, JUDGE PRESIDING

## O P I N I O N

A jury convicted Arthur Guilbault of driving while intoxicated. *See* Tex. Penal Code § 49.04(a), (b). The trial court assessed Guilbault's punishment at 180 days' confinement in the county jail, *see id.* § 12.22, but suspended the imposition of sentence and placed him on community supervision for ten months, *see* Tex. Code Crim. Proc. art. 42A.053. Guilbault filed a motion for new trial "in the interest of justice." In his motion and argument at the new-trial hearing, Guilbault complained that he was deprived of a fair trial due to "disingenuous" testimony from the arresting officer and that the State failed to correct the false or misleading testimony. The trial court signed an order granting the motion for new trial, which the State appeals. *See id.* art. 44.01(a)(3). The State contends that Guilbault's motion and hearing argument presented only one issue that the trial court could properly consider and that the trial court abused its discretion by granting the new trial. We will reverse the trial court's order.

# BACKGROUND

Evidence at trial showed that New Braunfels Police Department Officers John Lopez and Zachary Kory were on traffic patrol near midnight on November 2, 2016, when Officer Lopez noticed a pickup truck traveling on IH-35 that appeared to have only an "LED light bar" and not its headlights illuminated. At 11:45 p.m., the officers conducted a traffic stop of the truck, driven by a man later identified as Guilbault. The patrol car's dash-cam video of the stop was admitted into evidence.

Guilbault was the driver and the only occupant of the truck. Officer Kory told Guilbault that he was being stopped because of the "light that was in the front" and said, "It looks cool, but you need to have your headlights on." While Officer Kory called for a driver's-license check, Officer Lopez spoke with Guilbault. Officer Lopez noticed that Guilbault had an odor of alcohol emitting from his breath and body, his eyes appeared glossy and bloodshot, his speech was slurred, and he "swayed" while speaking—all of which Officer Lopez considered signs of intoxication. He asked Guilbault what he had to drink that night. Guilbault initially replied that he had a "couple of beers" and that he started drinking about 7:00 p.m. When asked what kind of beer he had and how many, Guilbault stated that he had only "one quart," a "32 ounce" Bud Light between 7:00 p.m. and 8:00 p.m. Officer Lopez then conducted standardized field-sobriety tests on Guilbault.

Officer Lopez testified that he had been a certified peace officer for six years, had been trained and certified to administer standardized field-sobriety tests since 2013, and had administered those tests approximately 200 times during his career. He also testified that driving is a divided-attention task and that the field-sobriety tests were designed as divided-attention tests.

2

During his field-sobriety testing, Guilbault exhibited six of the six possible clues on the horizontal-gaze-nystagmus (HGN) test—including lack of smooth pursuit of the eyes, sustained nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees—and swayed during this test. He exhibited six of the eight possible clues on the walk-and-turn test, including inability to maintain the starting position, stepping off the line during the walking portion, not touching heel to toe, using his arms for balance, pausing during the test, and making an improper turn. Additionally, Guilbault exhibited three of the four possible clues on the one-leg-stand test, including putting his foot down during the test, swaying, and using his arms for balance.

After concluding his investigation, Officer Lopez determined that Guilbault had been driving while intoxicated and had lost the normal use of his mental or physical faculties due to alcohol consumption. Officer Lopez arrested Guilbault for DWI and handcuffed him. Guilbault asked if the police could "just follow [him] back to the hotel room" where he was staying. Officer Lopez said that they could not do that.

He then read the "DIC-24" statutory warning to Guilbault, explaining the implications for his driver's license if he refused to provide a breath or blood sample. When Guilbault refused to provide either sample, Officer Lopez sought and obtained a search warrant for Guilbault's blood. The blood draw was conducted at a hospital at approximately 1:53 a.m., just over two hours after the stop. Subsequent testing of that blood showed that Guilbault had a blood-alcohol content (BAC) of 0.087 grams of alcohol per 100 milliliters of blood, a result exceeding the .08 legal limit for alcohol concentration. *See* Tex. Penal Code § 49.01(2)(B).

During trial, the forensic scientist with the Texas Department of Public Safety who analyzed the blood testified that "we're 99.7 percent confident" the "[m]easure result is

3

.087." He explained that there is a plus-and-minus range of where a sample could test, if it were tested many times, and that in this case, the entire range above and below the .087 test result is greater than the .08 legal definition of intoxication in Texas. Additionally, he testified that based on his training and experience, he would not expect someone who had consumed only 32 ounces of a five percent beer to have a BAC of .087 six hours later, and he had "no personal experience of something like that occurring."

Defense counsel conducted a lengthy cross-examination of Officer Lopez during trial. Part of his questioning relied heavily on excerpts from a 2007 study on the HGN test conducted by the National Highway Transportation and Safety Administration (NHTSA). Based on those excerpts, defense counsel suggested that the 2007 study "calls into question the validity of the HGN as an indicator of intoxication," but Officer Lopez disagreed.[1] Over the State's objection, the trial court granted defense counsel's request to take judicial notice of the 2007 study as a "learned treatise." *See* Tex. R. Evid. 803(18).

The 2007 study addressed the administration of the HGN test—specifically the lack-of-smooth-pursuit component—and whether the movement of "the stimulus a little bit faster, maybe had it a little bit further from the person's eye or a little bit higher or lower" would affect the results of the HGN test. Although none of the test subjects in the study had a BAC of 0.0, one of them had a BAC of 0.016 and showed four clues on the lack-of-smooth-pursuit component of the HGN test. Officer Lopez noted that lack of smooth pursuit is only one aspect

---

[1] The 2007 study actually concluded that "HGN as used by law enforcement is a robust procedure" and that "[t]he study findings provide no basis for concluding that the validity of HGN is compromised by minor procedural variations." Defense counsel acknowledged during the motion-for-new-trial hearing that the study's conclusion "was, hey, slightly deviating in some particulars does not affect the validity of the result."

4

of the three-battery HGN test administered to determine whether someone is intoxicated, that his training requires evaluation of the totality of the circumstances in determining whether someone is intoxicated, and that the HGN test is not his sole basis for determining intoxication. Relevant here, he recalled smelling an odor of alcohol from Guilbault, seeing his bloodshot and glassy eyes, and noticing his unsteadiness on his feet. Based on his training and experience, Officer Lopez opined that Guilbault was intoxicated and had an alcohol concentration above the legal limit of .08.

Defense counsel further cross-examined Officer Lopez about field-sobriety-test instructions in an out-of-date edition of an NHTSA manual from 2000. Officer Lopez testified that he was trained in field-sobriety testing in 2013 and not using the 2000 manual. He declined to evaluate his administration of the field-sobriety tests to Guilbault in 2016 based on the instructions from a 2000 manual that differed from his training. Officer Lopez stated his belief that the field-sobriety-test instructions had changed between 2000 and 2013 but that he could not be sure because he did not have his copy of the manual for comparison.

Finally, defense counsel cross-examined Officer Lopez about several perceived driving infractions by Officer Kory while transporting Guilbault from the hospital to the jail. Officer Lopez responded that police vehicles, as authorized emergency vehicles, were considered exempt from traffic laws regardless of whether an emergency situation existed, so long as the officer was "using good judgment in the interest of public safety." After the State objected to the relevance of this questioning in the DWI prosecution, the trial court paused the proceedings and provided the prosecutor with provisions of the Texas Transportation Code concerning operation of authorized emergency vehicles. *See* Tex. Transp. Code §§ 546.001-.002 (addressing operation of authorized emergency vehicle when handling certain emergency situations, when

5

directing or diverting traffic, or when conducting police escort); *see also id.* § 541.201 (defining "authorized emergency vehicle" to include "police vehicle"). Officer Lopez reviewed these statutes during the break. When the jury reconvened, Officer Lopez testified that he "was incorrect" and acknowledged that police officers like Officer Kory are not exempt from traffic laws unless they are in an emergency situation. During closing, defense counsel revisited these three topics of his cross-examination, concluding that Officer Lopez "lied" to the jury and "is an embarrassment and offensive to everybody who has any kind of conscience in this courtroom."

After considering the evidence presented during trial, the jury found Guilbault guilty of DWI as charged. The trial court assessed Guilbault's punishment at 180 days' confinement in the county jail but suspended the imposition of sentence and placed him on community supervision for ten months. Guilbault filed a motion for new trial, which the trial court granted after a non-evidentiary hearing. The State requested entry of findings of fact and conclusions of law but the trial court failed to make them. This appeal followed.

## DISCUSSION

The State contends that Guilbault presented only one issue that the trial court could properly consider as the basis for a new trial—whether the State failed to correct false or misleading testimony—and that the trial court abused its discretion by granting the new trial. We agree.

**Motion for New Trial "In the Interest of Justice"**

Guilbault filed a motion for new trial after initially filing his notice of appeal.[2] He did not raise any of the grounds requiring a new trial in Texas Rule of Appellate Procedure 21.3 but rather sought a new trial in the "interest of justice."[3] His written motion omitted any citation to the trial record, asserted that Officer Lopez intended to mislead the jury, concluded that "Officer Lopez'[s] disingenuous testimony served to deprive Defendant of a fair trial," and stated that Guilbault "presents this Motion for New Trial and moves the Court to grant said Motion in the interest of justice to ensure that [he] has been afforded a fair trial in accordance with the Constitution of the United States, the State of Texas and all applicable laws and

---

[2] We dismissed Guilbault's appeal after the trial court granted his motion for new trial. *See Guilbault v. State*, No. 03-19-00933-CR, 2020 Tex. App. LEXIS 649, at *1 (Tex. App.—Austin Jan. 23, 2020, no pet.) (mem. op., not designated for publication).

[3] Texas Rule of Appellate Procedure 21.3 requires a trial court to grant a new trial, or a new trial on punishment, to a defendant for any of the following reasons:

> (a) except in a misdemeanor case in which the maximum possible punishment is a fine, when a defendant has been tried in absentia or has been denied counsel; (b) when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights; (c) when the verdict has been decided by lot or in any manner other than a fair expression of the jurors' opinion; (d) when a juror has been bribed to convict or has been guilty of any other corrupt conduct; (e) when a material defense witness has been kept from court by force, threats, or fraud, or when evidence tending to establish the defendant's innocence has been intentionally destroyed or withheld, thus preventing its production at trial; (f) when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result; (g) when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial; or (h) when the verdict is contrary to the law and the evidence.

Tex. R. App. P. 21.3.

procedures." At the hearing on the motion for new trial, Guilbault again explained that his motion was brought on a "more generalized, non-statutory" basis, "in the interest of justice":

> I'd like to first start off by pointing out that Texas Rule[] of Appellate Procedure 21.3 lists the legal grounds for which a trial court must grant a new trial; but as we know that list is not exhaustive. Matter of fact, my research has showed me that more often than not the motions for new trial that are raised and granted have to deal with the more generalized non-statutory court being able to grant, quote/unquote, in the interest of justice. That's what we're bringing this Motion for New Trial under.

"Once a jury verdict of guilty has been returned, the only way in which a trial court may undo that verdict is by way of an order granting a motion for new trial." *In re State ex rel. Mau v. Third Court of Appeals*, 560 S.W.3d 640, 647 (Tex. Crim. App. 2018). A defendant must establish the truth of the allegations contained in his motion for new trial. *King v. State*, 502 S.W.2d 795, 800 (Tex. Crim. App. 1973). We review a trial judge's ruling on a motion for new trial for an abuse of discretion." *International Fid. Ins. Co. v. State*, 586 S.W.3d 9, 12 (Tex. Crim. App. 2019) (citing *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017); *State v. Herndon*, 215 S.W.3d 901, 906-07 (Tex. Crim. App. 2007)).

That discretion is not unbounded or unfettered. *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex. Crim. App. 2017); *State v. Zalman*, 400 S.W.3d 590, 593 (Tex. Crim. App. 2013). "A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law." *Herndon*, 215 S.W.3d at 907. A trial judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because he believes that the defendant received a raw deal or is innocent. *Zalman*, 400 S.W.3d at 593; *Herndon*, 215 S.W.3d at 907; *see Arizmendi*, 519 S.W.3d at 148. Generally, a trial judge would not abuse his discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his

motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. *Herndon*, 215 S.W.3d at 909; *see* Tex. R. App. P. 44.2 (providing that non-constitutional error that does not affect substantial rights must be disregarded). As the Court of Criminal Appeals has explained, "trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon*, 215 S.W.3d at 909.

Further, while a judge may grant a motion for new trial "in the interest of justice," "'justice' means in accordance with the law." *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014); *Zalman*, 400 S.W.3d at 593; *Herndon*, 215 S.W.3d at 907. "In the interest of justice" is not an independent basis for granting a new trial to a criminal defendant. *Thomas*, 428 S.W.3d at 105; *see Arizmendi*, 519 S.W.3d at 161 (Newell, J., concurring) (noting that "'interest of justice' is not a legal claim unto itself"). "There must be some legal basis underpinning the grant of a new trial, even if it is granted in the interest of justice." *Thomas*, 428 S.W.3d at 105; *see Mau*, 560 S.W.3d at 647 (noting that trial court may not grant new trial, "even 'in the interest of justice,' in the absence of some legal defect in the proceeding to justify its order"); *see also State v. Trahan*, No. 14-15-00472-CR, 2016 Tex. App. LEXIS 616, at *19 (Tex. App.—Houston [14th Dist.] Jan. 21, 2016, pet. ref'd) (mem. op., not designated for publication) (noting that "interest of justice" standard does not relieve movant of his burden to satisfy evidentiary requirements of motion for new trial). Thus, a trial court "does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law." *Herndon*, 215 S.W.3d at 907.

When ruling on a motion for new trial that sets out a valid legal claim, a trial court should exercise its discretion by "balancing a defendant's 'interest of justice' claim against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2." *Id.* at 908. If the defendant's substantial rights were not affected, trial courts should not grant a new trial. *Id.* "Otherwise, the phrase 'interest of justice' would have no substantive legal content but constitute a mere platitude covering a multitude of unreviewable rulings." *Id.* "Granting a new trial on a 'non-legal or legally invalid reason is an abuse of discretion.'" *Arizmendi*, 519 S.W.3d at 148 (quoting *Herndon*, 215 S.W.3d at 907).

**Order Granting New Trial Was Abuse of Discretion**

Here, the legal basis stated in Guilbault's written motion was that Officer Lopez's "disingenuous" testimony deprived Guilbault of a fair trial. During the hearing on the motion for new trial, Guilbault added that "the State failed to correct false and/or misleading testimony from Officer Lopez," which was "the flaw in this trial." No witness testimony or other evidence was presented to the trial court during the hearing on the motion for new trial, which consisted entirely of counsel's argument. *See* Tex. R. App. P. 21.7 (providing that trial court "may receive evidence by affidavit or otherwise" at hearing on motion for new trial in criminal cases). Guilbault's argument during the hearing reiterated his complaints about Officer Lopez's responses on cross-examination concerning the 2007 study addressing administration of the lack-of-smooth-pursuit component of the HGN test, the field-sobriety-test instructions in an NHTSA manual from 2000, and the applicability of a statutory exemption for perceived driving infractions by Officer Kory in a non-emergency situation.

Persuaded by Guilbault's argument, the trial court stated:

I will say that what was the most disturbing part about that case was the officer's testimony. I am not attributing that to you. But it was pretty apparent to me that he was extremely evasive, No. 1. I wasn't sure what the jury was going to do with that. I am not sure if they established that the credibility was an issue or not for them. But he was very evasive. I think he was on the stand a whole day, which is about three times longer than most officers are on when they are—even if they are the first witness. He was on the stand the whole day and I don't know that I have ever had that.

I didn't appreciate that very much from my viewpoint and I didn't appreciate the fact in my view—in my opinion I think he knew exactly what he was saying when he was talking about whether or not what the officer could or could not do whether it was an emergency situation or not. The fact that he even said—what I recall is when we came back the next day he stuck with his testimony or stuck with that he could do essentially whatever he wanted. Only after I presented him with the statute through y'all—through you—was he compelled to correct himself to avoid perhaps a perjury charge against himself. To me it was very embarrassing for the officer and I don't think it's something that the New Braunfels Police Department would want to hold out as an example how to present yourself during the course of a trial.

. . . .

His way of showing his skepticism was not really appropriate. It's one thing if he says, look, I don't know what that is and I'm sorry I haven't seen it. I recognize it—you know, and he did crawfish in the—all of a sudden everything that when he testified NHTSA was authoritative and then when he's presented with a study that was completed by NHTSA he was challenging that study and it wasn't—in a way that was I guess evasive is the best way to say it. Evasive from the standpoint of simply answering the questions. . . . I don't know how to describe that, like I said other than simply being evasive and it was very frustrating.

As to Officer Lopez's testimony about the statute addressing driving a police vehicle during non-emergency situations, the trial court stated:

I heard his testimony [during trial]. I didn't believe him. . . . I just flat didn't— again, I am not—I saw what you were faced with. I did not believe him. I did not believe that he knew that that was the truth when he testified the first time. . . . To me that's a basic rule that every officer is going to know whether or not they

11

can—or what they can and can't do.  He knew exactly what he can and can't do when it comes to emergency procedures or not driving when it's an emergency.  They have to be—they have to—their driving is like any other citizen.  When they are driving if it's not an emergency.  When it becomes an emergency, the rules change completely.  No question about it.

The trial court concluded the hearing with its ruling granting a new trial "because of the way the officer testified" during the trial two months earlier:

I think because of the way the officer testified I'm going to grant it.  We're going to do it again.  I'm not sure the results will be the same or different, but I'm going to give the officer a chance to redeem himself.  At least as far as I'm concerned he's not going to be in front of a jury—will be a different jury, but I'll give him a chance to redeem himself.

### 1. Trial court re-evaluated weight and credibility of evidence presented during trial

The State contends that if the trial court granted a new trial based on its own determination about the credibility of Officer Lopez's testimony during the trial, it abused its discretion.  Guilbault responds, without citation to authority, that "[a]kin to a motion to suppress hearing, the trial court is the sole trier of fact, the judge of the credibility of the witnesses and the weight to be given their testimony when determining the grounds for a new trial."  We agree with the State.

Ordinarily, "[t]he trial court, as factfinder, is the sole judge of witness credibility at a hearing on a motion for new trial with respect to both live testimony and affidavits." *Dixon v. State*, 595 S.W.3d 216, 224 n.24 (Tex. Crim. App. 2020) (quoting *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex. Crim. App. 2013)); *see Ford v. State*, 129 S.W.3d 541, 548 (Tex. App.—Dallas 2003, pet. ref'd) (noting that trial court is "sole judge of the credibility of the testifying witnesses at the hearing on [defendant]'s motion for new trial").  But here, neither

witnesses nor affidavits were presented in support of Guilbault's motion. Thus, during the motion for new trial hearing, the trial court re-evaluated Officer Lopez's credibility based exclusively on the evidence presented to the jury during trial. *Cf.* Tex. Code Crim. Proc. art. 38.04 (providing, in relevant part, that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony").

However, "[w]hether a witness is credible is a fact question that goes to the weight of the witness's testimony." *Smith v. State*, 490 S.W.2d 902, 907 (Tex. App.—Corpus Christi–Edinburg 1972, no pet.). "[T]he jury is the exclusive judge of the facts, credibility of the witnesses, and weight to be given to the testimony." *Ex parte Thomas*, 638 S.W.2d 905, 907 (Tex. Crim. App. 1982). Thus, "in a jury trial, the jury, not the court, is the fact finder." *Else v. State*, 666 S.W.2d 251, 253 (Tex. App.—Dallas 1984, pet. ref'd).

Guilbault had the burden of showing his entitlement to a new trial under the law. *See Herndon*, 215 S.W.3d at 907. He has not done so here. During the new-trial hearing, he presented no additional testimony or affidavit evidence supporting his challenge to Officer Lopez's credibility. The trial court substituted its judgment for that of the jury by ruling on the credibility of Officer Lopez's testimony using only the evidence presented to the jury during trial and not any evidence presented to the trial court at the new-trial hearing. At the end of the hearing, the trial court explained that it was granting a new trial "because of the way the officer testified" and "to give the officer a chance to redeem himself." Granting a new trial for these legally invalid reasons was an abuse of the trial court's discretion. *See Arizmendi*, 519 S.W.3d at 148; *Herndon*, 215 S.W.3d at 907; *see State v. Balderas*, 915 S.W.2d 913, 919 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (reversing order granting new trial where "nothing

13

introduced at the hearing for new trial was sufficient to support [defendant]'s allegations that a new trial should be granted").

### 2. No showing that Guilbault's substantial rights were affected

Guilbault also complains that Officer Lopez provided "false and/or misleading testimony" that "the State failed to correct," which was "the flaw in this trial." However, even if the trial court was persuaded by that argument, as it appears to have been, Guilbault failed to show that his substantial rights were affected by the complained-of testimony from Officer Lopez. "Trial courts should not grant a new trial if the defendant's substantial rights were not affected." *Herndon*, 215 S.W.3d at 908. Any error, defect, irregularity, or variance that does not affect substantial rights—meaning those that did not seriously affect the verdict or render the trial fundamentally unfair—must be disregarded. *See* Tex. R. App. P. 44.2(b); *Jacobson v. State*, 398 S.W.3d 195, 204 (Tex. Crim. App. 2013); *State v. Barragan*, 421 S.W.3d 16, 23 (Tex. App.—Waco 2013, pet. ref'd).

Here, Guilbault has not shown that the jury's verdict in this DWI case was seriously affected or that his trial was rendered fundamentally unfair by Officer Lopez's testimony concerning the 2007 study on administration of the HGN test's lack-of-smooth-pursuit component, the field-sobriety-test instructions in an NHTSA manual from 2000, and the applicability of a statutory exemption for perceived driving infractions by Officer Kory in a non-emergency situation. Aside from that testimony, the jury had evidence that Guilbault admitted to having "a couple of beers" but then changed his answer to one quart of beer, had an odor of alcohol from his breath and body, and had bloodshot and glassy eyes. Moreover, independent of the field-sobriety tests and Officer Lopez's observations of Guilbault, the jury had evidence showing that Guilbault had a BAC of .087, which met the statutory definition of "intoxicated" in

14

the Penal Code. *See* Tex. Penal Code § 49.01(2)(B). Nothing shows that the jury would have returned a different verdict given this evidence. *See Barragan*, 421 S.W.3d at 23 (concluding that even if change in witness's testimony "rendered his trial testimony false or misleading such that the State was required to re-open the testimony, thus satisfying *Herndon*'s second step, [defendant] did not show that his substantial rights were affected" and that trial court erred by granting new trial); *see also Sanchez v. State*, No. 01-08-00423-CR, 2009 Tex. App. LEXIS 1420, at *16 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that although officer's testimony erroneously indicated that only cause of involuntary eye movement during HGN test was "introduction of alcohol into the system," "there [wa]s no reasonable likelihood that the false testimony could have affected the judgment of the jury" considering other evidence of defendant's intoxication presented during trial). Further, Officer Lopez's testimony about the applicability of a statutory exemption for perceived driving infractions by Officer Kory was not material to Guilbault's prosecution for DWI, *see, e.g.*, *Ex parte Castellano*, 863 S.W.2d 476, 485 (Tex. Crim. App. 1993) (noting that perjured testimony must be "material" for it to violate defendant's due-process rights), and the jury heard Officer Lopez correct his testimony after reviewing the applicable statute.

Without evidence establishing harm to his substantial rights under the standards in Rule 44.2, Guilbault could not meet his burden of showing his legal entitlement to a new trial. *See Herndon*, 215 S.W.3d at 909; *see also Trahan*, 2016 Tex. App. LEXIS 616, at *19-20 (concluding that trial court abused its discretion by granting new trial where defendant failed to meet his evidentiary burden and failed to "establish harm"). On this record, Guilbault failed to show the requisite degree of harm. Accordingly, we conclude that the trial court abused its discretion by granting a new trial. *See Arizmendi*, 519 S.W.3d at 148 ("Granting a new trial for a

15

'non-legal or legally invalid reason is an abuse of discretion.'" (quoting *Herndon*, 215 S.W.3d at 907)); *Herndon*, 215 S.W.3d at 907 ("[T]he trial court does not have discretion to grant a new trial unless the defendant shows that he is entitled to one under the law."). We sustain the State's issue.

## CONCLUSION

We reverse the order granting a new trial and remand this cause to the trial court with instructions to reinstate the judgment of conviction in accordance with the jury's verdict and the sentence imposed by the trial court. *See Arizmendi*, 519 S.W.3d at 151.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Baker and Triana

Reversed and Remanded

Filed:   January 13, 2022

Publish

16