

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00254-CR

———————————————

THE STATE OF TEXAS, Appellant

V.

ANICETO TURRUBIATES SANCHEZ

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR21-0818

---

Before Kerr, Wallach, and Walker, JJ.
Opinion by Justice Kerr
Justice Walker concurs without opinion.

# OPINION

A jury found Appellee Aniceto Turrubiates Sanchez guilty of continuous sexual abuse of a young child (Jane)[1] and assessed his punishment at 35 years' confinement, and the trial court sentenced him accordingly. But the trial court granted Sanchez a new trial based on his assertion that the trial court's admission of testimony from two witnesses—Stacey Henley and Brittany Lain, whose testimony Sanchez argued was not within the outcry-witness hearsay exception, *see* Tex. Code Crim. Proc. Ann. art. 38.072—likely injured his rights, *see* Tex. R. App. P. 21.3(b).

The State appeals, arguing that the trial court abused its discretion by granting the new-trial motion. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(3). The State contends that Henley's outcry testimony was otherwise admissible under the medical-diagnosis-or-treatment exception to the hearsay rule and that the same or similar evidence to Lain's outcry testimony was admitted without objection via Jane's testimony, Jane's mother's testimony, and Jane's medical records, rendering any error by admitting Lain's outcry testimony harmless. Because we agree that the trial court erred by concluding that (1) it had erroneously admitted Henley's testimony and (2) Sanchez's substantial rights were likely injured by admitting Henley's and Lain's

---

[1]We use pseudonyms to refer to the victim, a minor, and we refer to her family members by their relationship to the victim to protect the victim's privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal judicial process"); Tex. R. App. P. 9.10(a)(3).

outcry testimony—they were not—we reverse the trial court's order granting Sanchez's new-trial motion.

## I. Background

### A. Mother discovered Sanchez's sexual abuse of Jane.

On July 31, 2021, when Mother came home from work, she thought it was unusual that her bedroom door was closed. Upon opening the door, Mother saw Jane (aged 11) and Sanchez (aged 36) together under the covers in bed. As Mother entered the room, she observed Sanchez immediately turn away from Jane. When Mother pulled the covers back, she saw that Jane was naked from the waist down, and she told Jane to get dressed, which Jane did. Sanchez pretended to be sleeping and would not speak with Mother.

Mother went to Jane's room to ask what was going on. Jane was initially reluctant to talk, but she eventually told Mother that Sanchez "was touching her on her private area" with his hands and that "she was touching his penis." Mother again confronted Sanchez, who denied knowing anything and claimed to have been sleeping.

### B. Jane told multiple people about Sanchez's sexual abuse.

Mother immediately took Jane to a hospital in Azle, which sent them to Cook Children's Medical Center. While at Cook Children's, Jane spoke with and was examined by a Sexual Assault Nurse Examiner, Stacey Henley. During the examination, Jane told Henley that "[Sanchez] put his finger in me." Jane also

3

gestured with her fingers to show Henley what Sanchez had done. Jane said Sanchez had only been pretending to sleep when Mother came in the room.

Jane said this was not the first time Sanchez had done this to her; it had started in March of 2021. Jane told Henley, "Normally, he takes his . . . penis[,] and he rubs it on my . . . vagina." When asked if she said "on" or "in," Jane reiterated "just on top of the lips." Jane said that "[i]t happens when my mom is at work," and she reported that she had been assaulted "a lot," approximately 10–20 times.

Later that evening, Mother spoke and met with a criminal investigator, Nathan Vick, and Jane met with a forensic interviewer, Brittany Lain. Jane told Lain about what Sanchez had done to her from March of 2021 through July of 2021.

## C. Sanchez was indicted.

Sanchez was indicted for continuous sexual assault of a child younger than 14. The indictment alleged that Sanchez had committed two or more acts of sexual abuse against Jane during a period more than 30 days in duration by (1) touching Jane's genitals with his finger or hand, (2) touching Jane's sexual organ with his sexual organ, and (3) penetrating Jane's sexual organ with his finger. *See* Tex. Penal Code Ann. § 21.02.

## D. The State intended to offer outcry testimony from multiple witnesses but did not get a pretrial ruling.

Before trial, the State filed a pretrial notice of its intent to introduce Jane's hearsay statements under Article 38.072. *See* Tex. Code Crim. Proc. Ann. art. 38.072. In the notice, the State offered summaries of two outcry witnesses:

(1) **[Mother:]** On or about July 31, 2021[,] . . . Sanchez . . . and Jane . . . were in bed together in the master bedroom of our house. When I [Mother] entered the room, [Sanchez] turned over as if he was sleeping. When I . . . pulled the covers back, [Jane] was not wearing any pants or underwear. [Jane] said [Sanchez] stuck his finger inside of her. Two to three nights or so before this happened I . . . woke up and I saw [Sanchez] walk into [Jane's] bedroom. When he heard me, he came back into our bedroom. According to [Jane], this happens a lot. There was one other time when [Jane] was in my bed and she didn't have any pants on. She said she was just trying to be comfortable. I told her to get her pants on and get out of the room. [Jane] told me that [Sanchez] was rubbing her vagina that time.

(2) **[Brittany Lain:]** Prior to July 31, 2021[,] . . . Sanchez . . . and Jane . . . were in bed together. [Jane] said she had no pants and no underwear on. This has happened with [Sanchez] more than one time. The first time it happened was when they moved to Azle in March of 2021. [Jane] was 11 when it started and still 11 when it ended. The first time something happened [Sanchez] texted [Jane] to come and watch a movie with him in his bedroom. He pulled [Jane's] pants down and began to touch her on her private area (gesturing to her genital area) where she goes to pee. He used his penis to touch her private area. He used his penis to touch the outside of [Jane's] body. [Sanchez's] penis was out of his pants. The last time something happened.

On or about July 31, 2021[,] [Sanchez] told [Jane] to take off her pants and [Sanchez] put his finger inside of her private area. [Sanchez] had texted [Jane] to come to see him but [Jane] no longer had that text because [Sanchez] told her to delete it. After [Mother] walked in the door, [Sanchez] was pretending to be asleep.

5

These things have happened between 10-20 times between March/April and July 2021. [Sanchez] told [Jane] to keep it a secret so [Mother] wouldn't get mad. [Sanchez] used his penis to touch [Jane's] private area "a lot". It happened in [Sanchez's bedroom].

During an April 10, 2024 pretrial hearing concerning the State's notice, the prosecutor stated, "So I think that, functionally, in the objections to their testimony would be at the time that we proffer them as witnesses outside the presence of the jury." The defense attorney responded, "There are multiple ways to do it, but that certainly makes sense. And, of course, I do have an objection, and I'm not waiving it, but I'll just offer it up at that time."

The next day, the State amended its notice, identifying Stacey Henley as a third outcry witness, who intended to offer the following outcry testimony:

My stepdad (Aniceto Sanchez) [p]ut his finger in me around 12 today (July 31, 2021) or a little before. He had just put his fingers inside me when [Mother] came into the room. He rolled over and pretended to be asleep. I had no pants or underwear on. This was not the first time that he's done this to me. He's done it a lot, like 10 to 20 times. The sexual abuse started when we moved to Azle in March. It has happened a lot. It happens when [Mother] is at work. Normally he takes his penis and rubs it on my vagina. His penis has never gone inside me. His penis stays on top of my lips (genitals). [Jane] motioned with 2 fingers with one hand and one finger with the other hand on top.

Despite there being potential overlapping statements to differing adults without a clear indication of when Jane gave specific details to each adult about each alleged offense, the State did not request another pretrial hearing on the outcry testimony, and the trial court made no pretrial ruling concerning who the proper outcry witness

6

was or delineating whether more than one of these witnesses could properly testify about different alleged events. *See id.* art. 38.072, § 2(a).

## E. Sanchez was tried and convicted.[2]

At trial, Jane testified first. She testified about the July 31, 2021 incident, stating that Sanchez touched both inside and outside of her vagina with his hand and fingers. Jane also said that Sanchez had previously touched her vagina with his hands and penis, and she said this had started after they moved to Azle in March of 2021. She testified that, on that first occasion, Sanchez placed her on top of his penis when they both were not wearing pants or underwear and rubbed his penis against the outside of her vagina, but she said that Sanchez did not penetrate her.

Jane testified that Sanchez would send her a text to come to his bedroom, where the abuse occurred. Although Jane could not recall how many times Sanchez touched her vagina with his penis, she said it happened "a lot." She testified that Sanchez used his hands or fingers to touch her vagina "a few times." When asked how often Sanchez would "touch [her] like that," Jane answered, "Every time my mom worked the night shift." Jane was initially reluctant to tell Mother about the abuse because she thought she would be in trouble. Additionally, Sanchez had told Jane that "if [she] ever told anybody, he would hurt [Jane] and [her] mother."

---

[2]Because sufficiency of the evidence in not at issue, we discuss only those portions of testimony relevant to this appeal.

7

Mother testified next, and Sanchez did not object to Mother's testimony about what Jane told her. She described what she saw on July 31, 2021, including that Sanchez had "flipped over" when she found Jane and Sanchez in bed together. Mother testified that she questioned Jane, and Jane told her that she and Sanchez "had been touching each other." Jane told Mother that "[Sanchez] was touching her on her private area, that she was touching his penis." Jane told Mother that Sanchez used his hands to touch her, but Mother was unable to state whether it was on the inside or outside of Jane's vagina. Mother then described taking Jane to Cook Children's and later taking Jane for an interview.

The State called a law-enforcement witness and then called Lain, who testified that she was employed as a forensic interviewer and associate director at the Children's Advocacy Center of Parker County and had interviewed Jane on July 31. Sanchez objected to hearsay and bolstering and got a running objection to Lain's testimony.[3] The State told Lain not to focus on the incidents of July 31 but rather on what Jane had told her about prior sexual assaults. According to Lain, Jane had moved to Azle in March of 2021 and Sanchez's abuse of Jane began in April of 2021. Lain testified that Jane told her Sanchez would text her to come to his bedroom and that he had used his hands to touch the outside and inside of her vagina and his penis to

---

[3]Although the trial court considered each side's arguments outside the jury's presence, it waited to overrule Sanchez's objections and gave Sanchez a running objection in front of the jury.

touch the outside of her vagina between 10 and 20 times between March and July of 2021. Lain testified that Jane said the abuse happened while Mother was at work and that Jane was concerned Mother would be mad if Jane told her about the abuse.

The State then called several law-enforcement witnesses. Among other things, the jury heard audio from Investigator Vick's July 31 interview of Sanchez, during which Sanchez denied sexually assaulting Jane but also said he was not calling her a liar. The jury also heard that SANE Henley had collected some DNA samples from Jane, but those samples did not show the presence of semen or anyone else's DNA.

On the second and final day of trial, Henley testified about her qualifications as a SANE at Cook Children's and her examination of Jane. Henley confirmed that she had created a number of medical records during her intake and examination of Jane, and the State offered State's Exhibit 13, which contained excerpts from Jane's medical records, with a business-records affidavit. Although Sanchez's counsel asked to "take a minute or so with a couple of pages," he stated, "Thank you, Your Honor. No objection." Among other things, State's Exhibit 13 contained Henley's notes about what Jane and Mother had told Henley about Sanchez's sexual abuse of Jane.

Henley testified about examining Jane, and when asked about what Jane had told her, Sanchez's counsel asked to make an objection at the bench: "I would like to reurge the same objection that I made on [Lain] . . . as to hearsay and bolstering[,] . . . and misleading the jury." After overruling the objection, the trial court granted a running objection.

9

Henley then described Jane's examination and explained that she had swabbed Jane's vaginal area for potential DNA because Jane had told her "[t]hat [Sanchez] had put his finger inside her." When asked about what Jane had said about the first time Sanchez had touched her, Henley testified that "[s]he said that the first time his finger had gone on top. And normally he puts -- she was very hesitant to talk, but he will put his penis on top, he will rub -- and he rubs it on [her] vagina." Henley also testified about how Jane had gestured with her fingers to show where Sanchez had touched her.[4]

The only witness Sanchez called to testify was his sister, who testified that Sanchez's then-wife—Mother—served Sanchez with divorce papers while he was in jail and divorced him. After hearing closing arguments, the jury found Sanchez guilty of continuous sexual abuse and assessed his punishment at 35 years' confinement.

**F. After signing Sanchez's judgment of conviction, the trial court granted Sanchez's new-trial motion.**

The trial court signed a judgment of conviction and sentenced Sanchez according to the jury's verdict. Sanchez timely filed a new-trial motion, complaining that the trial court had erred by allowing Lain's and Henley's testimony. After a hearing during which the trial court considered only the transcribed testimony of Mother, Lain, and Henley—but not Jane's testimony or medical records—the trial court granted the

---

[4]All of the statements quoted in this paragraph were also in the medical records in State's Exhibit 13.

new-trial motion and signed an "Order on Motion for New Trial" that contained various findings of fact and conclusions of law.

Among the findings, the trial court determined that Mother was the first person whom Jane had told about the July 31, 2021 incident, including allegations of "digital penetration," as well as conduct occurring before July 31, 2021. The trial court found that (1) Henley and Lain had both testified about the July 31 incident and incidents before that date and (2) the trial court had overruled timely running hearsay objections to their testimony. The trial court then concluded that "[a]dmission of the Lain and Henley testimony was error" because it was "not permitted by Article 38.072" and that "[Sanchez's] substantial rights were likely injured by the erroneously admitted evidence." The State appealed, seeking to reverse the new-trial order and to reinstate Sanchez's judgment of conviction.

## II. Standard of Review

Texas Rule of Appellate Procedure 21.3 addresses when a trial court must grant a defendant a new trial. *See* Tex. R. App. P. 21.3. Rule 21.3(b) states that a defendant must be granted a new trial "when the court has misdirected the jury about the law or has committed some other material error likely to injure the defendant's rights." Tex. R. App. P. 21.3(b).

We review a trial court's ruling on a new-trial motion for an abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). We view the evidence in the light most favorable to the trial court's ruling and uphold that

11

ruling if it was within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable." *McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012) (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)). We presume the trial court correctly granted a new trial, and the State has the burden to establish the contrary. *State v. Sanders*, 440 S.W.3d 94, 99 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (mem. op.). We will uphold the trial court's judgment if any appropriate ground exists to support it. *Id.*

But a trial court's discretion to grant a new trial is not unbounded or unfettered. *Herndon*, 215 S.W.3d at 907. In other words, "[t]here must be some legal basis underpinning the grant of a new trial, even if it is granted in the interest of justice." *State v. Thomas*, 428 S.W.3d 99, 105 (Tex. Crim. App. 2014). A trial court abuses its discretion if it grants a new trial for a nonlegal or a legally invalid reason. *Id.* at 104 (citing *Herndon*, 215 S.W.3d at 907). A trial court "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because [it] personally believes that the defendant is innocent or 'received a raw deal.'" *Herndon*, 215 S.W.3d at 907.

### III. Article 38.072's Hearsay Exception for Outcry Statements

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements [guarantee] their reliability." *Martinez v.*

12

*State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072, also known as the outcry statute, creates a hearsay exception in certain child-sexual-offense prosecutions. Tex. Code Crim. Proc. Ann. art. 38.072; *Crump v. State*, No. 02-24-00063-CR, 2025 WL 18288, at *2 (Tex. App.—Fort Worth Jan. 2, 2025, pet. ref'd) (mem. op., not designated for publication).

Article 38.072 permits testimony from one outcry witness per event—that is, "the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a); *see Crump*, 2025 WL 18288, at *2; *Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.—Austin 2020, no pet.). Courts construe "about the offense" to mean a statement that "in some discernible manner describes the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). "[T]he statement must be more than . . . a general allusion" of sexual abuse. *Id.*

Thus, the proper outcry witness is not necessarily the first adult to whom the child revealed the abuse but, rather, the first adult to whom the child revealed specific details concerning the offense. *Id.*; *see, e.g.*, *Moore v. State*, No. 02-23-00152-CR, 2025 WL 353068, at *6–7 (Tex. App.—Fort Worth Jan. 30, 2025, no pet.) (mem. op., not designated for publication) (affirming trial court's determination that because a child's prior statements to her mother lacked sufficient detail, the proper outcry witness was an adult who later interviewed the child). A trial court may allow hearsay

13

testimony from more than one outcry witness if each witness testifies about different offenses. *See Crump*, 2025 WL 18288, at *2; *Gibson*, 595 S.W.3d at 326.

## IV. Analysis

In three appellate points, the State argues that the trial court abused its discretion by granting Sanchez's new-trial motion. We address the State's points out of order, but as we explain below, we agree with the State's first and third points.

### A. Sanchez's hearsay objections to the outcry testimony preserved error.

In its second point, the State argues that because Sanchez did not get a pretrial ruling on his outcry objections, he either waived or is estopped from raising an appellate complaint about the trial court's rulings on his outcry objections. We disagree.

#### 1. Preservation of error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion sufficiently stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). Further, the party must obtain an express or implicit adverse trial-court ruling or object to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Dixon v. State*, 595 S.W.3d 216, 223 (Tex. Crim. App. 2020).

14

## 2. Analysis

The State—which is the Appellant—argues that Sanchez failed to preserve error by (1) not getting rulings during the pretrial hearing on whether Jane made outcry statements about separate instances of sexual abuse to multiple adults and which adult was the proper outcry witness for each instance and (2) waiting until trial to make hearsay and bolstering objections. The State maintains that it was Sanchez's burden to parse through what was and was not admissible in Henley's and Lain's testimony and that "[i]t [was] not the trial court's responsibility to sort through challenged evidence to separate the admissible from the inadmissible." But in this State's appeal, the State's argument turns Article 38.072's error-preservation burden on its head. *See State v. Boyd*, 202 S.W.3d 393, 404 (Tex. App.—Dallas 2006, pet ref'd) ("[P]reservation of error applies to the party asserting the error, i.e., the appellant, not the appellee.").

Although Article 38.072 requires a party intending to offer an outcry statement to give pretrial notice of such an intent, it does not expressly require a pretrial ruling. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(b). Rather, Article 38.072 requires the trial court to hold a hearing outside the jury's presence to determine whether the hearsay statement is "reliable based on time, content, and circumstances of the statement." *Id.* Article 38.072's provisions "are mandatory . . . and must be complied with" for the outcry statement to be admissible over a timely hearsay objection. *Long v. State*,

15

800 S.W.2d 545, 547 (Tex. Crim. App. 1990); *Duncan v. State*, 95 S.W.3d 669, 671 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

And in *Long*, the Texas Court of Criminal Appeals held that a defendant may preserve error under Article 38.072 by objecting to hearsay during trial: "The burden then became the State's to show the evidence was admissible [under] either . . . Art[icle] 38.072 or . . . some other exception to the hearsay rule." 800 S.W.2d at 548;[5] *see also Galindo v. State*, No. 02-22-00151-CR, 2023 WL 2607752, at *3 (Tex. App.—Fort Worth Mar. 23, 2023, no pet.) (mem. op., not designated for publication) ("Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." (quoting *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008))).

Here, Sanchez objected to both Lain's testimony and Henley's testimony, arguing that Jane's outcry statements to each witness were hearsay and improper bolstering. During Lain's testimony, the trial court conducted a hearing outside the jury's presence during which the State and Sanchez argued under Article 38.072 about

---

[5]The State did not mention *Long* in its initial brief or in its reply brief, despite Sanchez's arguing that *Long* controls. Instead, the State cited a non-binding, inapposite case from New York that does not analyze Texas's outcry-witness statute or any statute similar to it. *See People v. Gooden*, 542 N.Y.S.2d 757, 759 (N.Y. App. Div. 1989) (stating in dicta that a defendant who withdrew a request for a hearing on a speedy-trial claim and pleaded guilty had precluded the record's factual development, which warranted affirmance).

whether Lain could offer outcry testimony. The trial court did not rule during that hearing but instead overruled Sanchez's objections in front of the jury and then granted Sanchez a running objection. This same general process played out during Henley's testimony—except that the court acted more quickly and ruled outside the jury's presence.

Once Sanchez objected, the State bore the burden to demonstrate the admissibility of the outcry statements through each witness. *See Long*, 800 S.W.2d at 548; *Galindo*, 2023 WL 2607752, at *3; *Walker v. State*, No. 01-21-00323-CR, 2022 WL 17981670, at *4–5 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication). If the record is insufficient to determine who was the proper outcry witness for the March 2021 offense, the July 31, 2021 offense, and any in between—which is at the core of this appeal—the fault lies not with Sanchez in "waiv[ing] . . . the outcry hearing [and] preventi[ng] . . . the trial court from obtaining a complete factual record." Instead, once Sanchez objected and insisted on a hearing outside the jury's presence, it was the State's obligation to establish for the trial court—and now this court—which adult witness was the proper outcry witness for each specific offense. *See Garcia*, 792 S.W.2d at 91. We reject the State's argument that Sanchez has waived or is estopped from raising complaints about what he contends was Lain's and Henley's inadmissible evidence and overrule the State's second point.

17

**B. The trial court abused its discretion by concluding that it had admitted Henley's testimony in error.**

In its first point, the State argues that Henley's outcry testimony was independently admissible under the medical-diagnosis-or-treatment hearsay exception—an issue it raised in the trial court.[6] Accordingly, the State contends that the trial court erroneously concluded that the "[a]dmission of . . . Henley['s] testimony was error," which cannot support the new-trial order. We agree.[7]

### 1. Admitting evidence under the medical-diagnosis-or-treatment exception to the hearsay rule

Trial courts have broad discretion in determining the admissibility of evidence. *Garcia*, 792 S.W.2d at 92. We will uphold an evidentiary ruling "if it is correct on any

---

[6]Sanchez argues that the State did not raise Rule 803(4)'s applicability during trial and failed to preserve the issue. But as the State points out, the State prevailed at trial in having Henley's testimony admitted under the outcry-witness exception. Once Sanchez asked the trial court to reconsider this ruling in his new-trial motion, the State raised Rule 803(4) as an alternative basis for the trial court to leave undisturbed its decision to admit Henley's testimony. Accordingly, the State met its burden to timely bring Rule 803(4) to the trial court's attention—explaining why Henley's testimony was admissible under Rule 803(4)—and has preserved for appellate review the rule's applicability. *See Herndon*, 215 S.W.3d at 909 n.29 ("The issue[] is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal.") (cleaned up); *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005).

[7]Because Henley's testimony about what Jane had told Henley was admissible under the medical-diagnosis-or-treatment exception, we need not reach the State's alternative argument that Henley was a proper outcry witness in addition to Mother. *See* Tex. R. App. P. 47.1.

theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006).

Under Texas Rule of Evidence 803(4), the trial court may admit into evidence statements "made for—and . . . reasonably pertinent to—medical diagnosis or treatment" that "describe[ ] medical history; past or present symptoms or sensations; their inception; or their general cause" even though they are hearsay. Tex. R. Evid. 803(4). For evidence to be admissible under this exception, the proponent normally must show that (1) the declarant "was aware that the statements were made for purposes of medical diagnosis or treatment and that proper diagnosis or treatment depended upon the veracity of the statements" and (2) "the statements are pertinent to diagnosis or treatment, i.e., that it was reasonable for the care provider to rely on the statements in diagnosing or treating the declarant." *Lumsden v. State*, 564 S.W.3d 858, 883 (Tex. App.—Fort Worth 2018, pet. ref'd) (citing *Taylor*, 268 S.W.3d at 588–89, 591). But the evidence's proponent "need not do so with magic words such as 'diagnosis' or 'treatment.'" *Walker v. State*, No. 02-16-00139-CR, 2017 WL 5494476, at *6 (Tex. App.—Fort Worth Nov. 16, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd)).

The court of criminal appeals has observed that "it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that [a] doctor's [or nurse's] questions are designed to elicit

accurate information and that veracity will serve their best interest." *Taylor*, 268 S.W.3d at 589. Thus, the court of criminal appeals recognized "the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that would negate such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies." *Id.* As we have previously observed, "[t]he court of criminal appeals has . . . not required the proponent of statements to a SANE to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity." *Lumsden*, 564 S.W.3d at 883–84 (citing *Taylor*, 268 S.W.3d at 589).

### 2. Analysis

Without deciding whether the State established that Henley's testimony about Jane's outcry statements was admissible under Article 38.072, we conclude that this testimony was admissible under Rule 803(4)'s medical-diagnosis-or-treatment exception. *See* Tex. R. Evid. 803(4).

As we explained above, Henley was a SANE, who worked in Cook Children's. She worked for the CARE Team, which cares for children if there is a concern about physical or sexual abuse. When asked what a SANE does, Henley stated that she "[d]oes a complete care examination, assessment, treatment, [and] planning for the patient." She first meets the patient, typically in the hospital emergency room, but the

patient sometimes comes directly to the CARE Team.[8] Henley will speak with the patient and his or her parent to get a medical history and to obtain signed consent forms. Next, Henley examines the patient. She sometimes draws blood from the patient and does other types of testing, depending on the situation.

Henley's contemporaneous notes from Jane's intake and examination indicate that Mother consented to "a medical examination for evidence of sexual abuse/assault and treatment for injuries." Henley wrote in her notes that "[Jane] is a very bright, talkative 11 y/o girl who is made aware that she is being seen for a medical exam." Henley took Jane's medical history from both Jane and Mother (including facts about the alleged sexual assault as well as past medical events, including chronic problems and a prior surgery), obtained Jane's vitals, and conducted what Henley described as a thorough "head-to-toe assessment." Henley's physical examination included checking Jane's eyes, skin, ears, mouth, and throat, and bodily systems including respiratory, cardiac, gastrointestinal, and musculoskeletal.

Because of Jane's report of a sexual assault, Henley also conducted an anogenital examination. Henley testified that when she is with a child patient, she explains what is going to happen "bit by bit," slowly and carefully, allowing the child to stop her at anytime to ask questions. In fact, Henley's notes reflect such pauses and

---

[8]Investigator Vick also testified about the CARE Team and Nurse Henley, stating that he spoke with Henley about her medical treatment of Jane as part of his investigation and before he interviewed Sanchez.

moments of reassurance. Henley's medical notes documented her findings from the anogenital examination. After completing the examination, Henley attempted to collect forensic evidence from Jane.

Henley found no oral, anal, or genital injuries, and in a section of the medical notes concerning STD and pregnancy prophylaxes, Henley checked boxes labeled "None" because there had been "no genital[-]to[-]genital acute contact." Henley counseled and reassured Jane about her sexual health, and indicated in her notes that she had provided Jane and Mother with aftercare instructions, including scheduling follow-up STD testing and lab work and providing a counseling list.

After reviewing the entire record, we conclude that it demonstrates that Jane was a child of sufficient age and apparent maturity to understand that she was at Cook Children's because of the sexual assault and needed to be truthful during SANE Henley's sexual-assault examination. *See Lumsden*, 564 S.W.3d at 887 (involving a seven-year-old victim). Jane's statements to Henley were therefore admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. *See* Tex. R. Evid. 803(4); *see, e.g., Gary v. State*, No. 02-21-00171-CR, 2023 WL 2805477, at *11–12 (Tex. App.—Fort Worth Apr. 6, 2023, no pet.) (mem. op., not designated for publication) (examining record and holding child patient's statements to SANE were admissible under Rule 803(4)); *Isadore v. State*, No. 02-21-00198-CR, 2023 WL 3878448, at *5–7 (Tex. App.—Fort Worth June 8, 2023, pet. ref'd) (mem. op., not designated for publication) (same); *Morrison v. State*, No. 2-05-443-CR, 2007 WL 614143, at *4 (Tex.

22

App.—Fort Worth Mar. 1, 2007, pet. ref'd) (mem. op., not designated for publication) (same); *Beheler*, 3 S.W.3d at 189 (same).

Accordingly, by concluding that it had erroneously admitted Henley's testimony, the trial court gave a legally invalid reason for granting Sanchez's new-trial motion. *See Thomas*, 428 S.W.3d at 104 (citing *Herndon*, 215 S.W.3d at 907). We sustain the State's first point.

## C. The trial court abused its discretion in conducting its harm analysis.

In its third point, the State argues that the trial court abused its discretion by concluding that Sanchez's rights were likely injured by the admission of Lain's and Henley's testimony because it did not consider the complete record, including portions—such as Jane's medical records—where Jane's outcry statements were otherwise admitted, and it therefore did not conduct a proper harm analysis. We agree.

### 1. Jane's medical records

Before getting to the issue of the trial court's harm analysis, we address a point of contention between the parties on whether Jane's medical records should have been considered in the trial court's harm analysis. As the State points out, Sanchez did not complain in his new-trial motion about the admission of Jane's medical records, and the trial court's new-trial order did not specifically determine that Jane's medical records were inadmissible. Sanchez, on the other hand, maintains that his running objection to Lain's testimony covered Jane's medical records.

23

Generally, a party must object each time inadmissible evidence is offered. *See* Tex. R. App. P. 33.1(a)(1); *Montelongo*, 623 S.W.3d at 822. While a party may ask for a running objection to eliminate redundant and disruptive individual objections, use of a running objection is limited "and cannot encompass too broad a subject matter, during too broad a time, or over different witnesses." *Blue v. State*, Nos. 02-17-00265-CR, 02-17-00266-CR, 02-17-00267-CR, 2018 WL 6844134, at *7–8 (Tex. App.—Fort Worth Dec. 31, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Ford v. State*, 919 S.W.2d 107, 113–14 (Tex. Crim. App. 1996)).

Here, Sanchez's running objection to Lain's testimony—obtained in the jury's presence—did not extend to Jane's medical records that Henley—a different witness—had created. *See Pinkston v. State*, Nos. 02-22-00076-CR, 02-22-00077-CR, 2023 WL 3017661, at *9 n.21 (Tex. App.—Fort Worth Apr. 20, 2023, pet. ref'd) (mem. op., not designated for publication); *cf. Sattiewhite v. State*, 786 S.W.2d 271, 283 n.4 (Tex. Crim. App. 1989) (cautioning that "an advocate who lodges a running objection should take pains to make sure it does not encompass too broad a reach of subject matter . . . over different witnesses"). But even if Sanchez's running objection covered Jane's medical records, Sanchez waived any error when his counsel—after "tak[ing] a minute or so with a couple pages"—unequivocally stated that he had "[n]o objection" to the admission of Jane's medical records. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010). Additionally, by the time Sanchez obtained a running objection to Henley's testimony, the trial court had already admitted Jane's

medical records.[9] *See Wilson v. State*, 44 S.W.3d 602, 606 (Tex. App.—Fort Worth 2001, pet ref'd). Accordingly, the trial court properly admitted Jane's medical records—as well as Henley's testimony—which it should have then considered in its harm analysis. *See* Tex. R. App. P. 21.3(b).

### 2. Harm under Rule 21.3(b)

A defendant must be granted a new trial when the trial court has committed a material error likely to injure his rights. *Id.* The court of criminal appeals has cautioned that although

> [t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial[,] . . . trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial.

*Herndon*, 215 S.W.3d at 909. Without giving bright-line rules, the court has suggested that

> a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure.

*Id.*

---

[9]In addition, even had Sanchez preserved error on an objection to the admissibility of Jane's medical records (which he did not), as we explained above, because Henley's testimony was admissible under Rule 803(4), so too were Jane's medical records that Henley had created. *See* Tex. R. Evid. 803(4); *Moore*, 2025 WL 353068, at *7 ("Texas courts—including this court—have consistently held that SANE reports are admissible under Rule 803(4).").

Rule 44.2(b)'s harm standard applies in the context of erroneously admitted outcry testimony. *See* Tex. R. App. P. 44.2(b); *Elder v. State*, 132 S.W.3d 20, 27 (Tex. App.—Fort Worth 2004, pet. ref'd); *West v. State*, 121 S.W.3d 95, 104 (Tex. App.—Fort Worth 2003, pet. ref'd). That rule requires a reviewing court to disregard any nonconstitutional error that does not affect an appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Elder*, 132 S.W.3d at 27; *West*, 121 S.W.3d at 104. A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *see King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

Conversely, an error does not affect a substantial right if the reviewing court has a fair assurance from an examination of the record as a whole that the error did not influence the jury or that it had but a slight effect. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021). In deciding that question, courts consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained-of error. *Id.*; *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Courts may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Haley*, 173 S.W.3d at 518–19; *Motilla*, 78 S.W.3d at 355–56.

### 3. Analysis

When the trial court granted Sanchez's new-trial motion, it concluded that admitting both Lain's and Henley's testimony was error and likely injured Sanchez's substantial rights. Because the State does not challenge the trial court's conclusion that it erred by admitting Lain's testimony about Jane's outcry statements, we must determine whether the erroneous admission of Lain's testimony harmed Sanchez given that the jury heard or considered Jane's testimony, Jane's medical records, Mother's testimony, and Henley's testimony.

The State argues that the trial court abused its discretion by only considering Mother's, Lain's, and Henley's testimony and not the remainder of the record, which was not transcribed at the time of the new-trial hearing. Sanchez responds that nothing required that the trial court have a complete reporter's record and that it could rely on its memory. We agree that a trial court may use its memory in ruling on a new-trial motion, *see, e.g.*, *State v. Barragan*, 421 S.W.3d 16, 22 (Tex. App.—Waco 2013, pet. ref'd), although it would seem preferable that a defendant provide the trial court with a complete record to ensure it can conduct a proper harm analysis,[10] *see State v. Guilbault*, 644 S.W.3d 727, 738 (Tex. App.—Austin 2022, pet. ref'd) ("Without

---

[10]We observe that during the in-trial argument about the admissibility of Lain's testimony (which occurred before noon on the trial's first day), the prosecutor, Sanchez's counsel, and the trial court all looked to the attorneys' notes to try to recall what Mother had testified to *earlier that morning*, and the hearing on the new-trial motion was *two months later*.

evidence establishing harm to his substantial rights under the standards in Rule 44.2, Guilbault could not meet his burden of showing his legal entitlement to a new trial."). But the primary problem in this case is that the trial court improperly considered the alleged harm from both Lain and Henley when it should have considered the impact, if any, only of Lain's testimony (that is, because Henley's testimony was admissible under Rule 803(4)'s hearsay exception).

With the complete record before us, we conduct such an analysis on Lain's testimony to explain the error in the trial court's harm determination. "In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection." *Galvan v. State*, No. 08-23-00162-CR, 2024 WL 1599208, at *6 (Tex. App.—El Paso Apr. 12, 2024, no pet.) (mem. op., not designated for publication) (first quoting *Gibson*, 595 S.W.3d at 327; then citing *West*, 121 S.W.3d at 105 (holding that error in admitting outcry testimony did not influence jury's verdict or had but a slight effect because complainant provided detailed testimony regarding the offense)); *see Elder*, 132 S.W.3d at 27.[11]

---

[11]We are unpersuaded by Sanchez's reliance on *Brown v. State*, 189 S.W.3d 382, 385–86 (Tex. App.—Texarkana 2006, pet. ref'd) (reversing conviction because of erroneously admitted outcry testimony). In *Brown*, the trial court admitted a counselor's outcry testimony and a videotaped interview of the child victim despite the fact that the victim had previously told her father about the sexual abuse. *Id.* Notably, no one else testified about the abuse, not even the child victim, which

As we detailed in Section I.E above, both Jane's trial testimony and her medical records set forth the same or similar facts as in Lain's testimony. Additionally, Mother testified about Jane's statements, and Henley also properly testified about Jane's statements. Lain's testimony about Jane's statements did not present any new information and was extremely brief (spanning fewer than six pages from the two-day trial's record). So the first three factors under *Macedo* weigh in favor of the error's being harmless. *See* 629 S.W.3d at 240.

And on the fourth factor, the State in its closing argument only once briefly mentioned Lain's name and focused mostly on the other evidence—Jane's testimony, Jane's medical records, Mother's testimony, and Henley's testimony—all of which was admissible.[12] On this record, we conclude that the trial court erred by (1) not considering all of the record evidence (including Henley's testimony) and (2) concluding that the trial court's erroneous admission of Lain's outcry testimony likely injured Sanchez's rights—it did not. *See Crump*, 2025 WL 18288, at *4–5; *Bell v. State*, No. 02-18-00244-CR, 2019 WL 1967538, at *4 (Tex. App.—Fort Worth May 2,

---

distinguishes *Brown* from this case and the other cited cases involving cumulative evidence. *Id.* at 388.

[12]Sanchez's closing argument focused on Mother being a "woman scorned," lying and "put[ting] up" Jane to lie about Sanchez, the lack of DNA, and the State not meeting its burden of proof. The jury—which found Sanchez guilty—was free to believe or disbelieve any or all aspects of Sanchez's version of events. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

2019, pet. ref'd) (mem. op., not designated for publication); *Elder*, 132 S.W.3d at 27–28; *see also Guilbault*, 644 S.W.3d at 738. We sustain the State's third point.

## V. Conclusion

Having sustained the State's first and third points, we reverse the trial court's order granting Sanchez's new-trial motion, and we remand the case to the trial court with instructions to reinstate Sanchez's judgment of conviction and sentence. *See State v. Arizmendi*, 519 S.W.3d 143, 151 (Tex. Crim. App. 2017).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Publish

Delivered: April 3, 2025